## Boyd, doing business under the firm name of Boyd, Lunham & Company v. City of Louisville, et al.

(Decided December 11, 1917.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Municipal Corporations—Ordinances—Inspection of Foods—Application of Ordinance.—An ordinance of the city of Louisville, providing for the inspection of meats, examined and held to apply to meats sold by a non-resident packer to customers in that city, on orders which were to become binding when approved at his home office, where in pursuance to such orders he agreed to deliver the meats to such customers.

2. Municipal Corporations—Ordinances—Inspection of Foods—Application of Ordinance.—An ordinance of the city of Louisville, providing for the inspection of meats, examined and held to provide for the collection of inspection fees from the seller.

3. Commerce—Meat Inspection—Municipal Regulations—Constitutionality.—Inspection fees fixed by a local ordinance for inspecting imported meats, are prima facie reasonable, and in the absence of an allegation that they are excessive, their collection will not be enjoined on the ground that they constitute an unlawful interference with interstate commerce; the mere fact that such fees, together with fees charged for inspecting intrastate meats, are placed in a common fund and used to pay the cost of both intra and inter state inspection, not being sufficient to raise the presumption that the fees for interstate inspection are unreasonable.

HENRY PIRTLE for appellants.

PENDLETON BECKLEY and STUART CHEVALIER for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

T. L. Boyd, doing business under the firm name of Boyd, Lunham & Company, brought this suit against the City of Louisville and Dr. W. E. Grant, health

officer, to enjoin the enforcement of "An ordinance for the inspection of animals slaughtered for Meat Supply in the city of Louisville." A demurrer was sustained to the petition and the petition dismissed. Plaintiff appeals.

The pertinent provisions of the ordinance in question are as follows:

"Section 1. The sale, offering, exposing or having for sale of any meat within the city of Louisville, which has not been inspected by federal, state or municipal authority at the time of slaughter is hereby prohibited, as well as the bringing of any such meat into the city of Louisville for the purpose of sale, except as otherwise provided in section 7. It shall further be unlawful for any person, firm or corporation to sell, expose or offer, or have in possession for sale for human consumption, any meat which is in anywise not fit for such purpose.

"Section 7. It shall be unlawful to sell, or offer, expose or have in possession for sale, any meat in the city of Louisville which has not been inspected and stamped at the time of slaughter by federal, state or municipal authority, except carcasses of meat slaughtered by farmers or others not regularly engaged in the slaughtering of animals. . . . . And provided, further, that nothing herein shall exempt federal and other inspected meat from inspection as to fit condition for food when arriving for sale, or when exposed for sale in the city of Louisville.

"Section 10. The city shall collect the sum of fifteen cents as an inspection fee for inspection of each carcass of beef, and five cents for inspection of each carcass of swine, sheep and veal at the time of slaughter, and shall collect the sum of five cents for each carcass of beef and three cents for each carcass of swine, sheep and veal, and proportionate fractional fees for each part of such carcasses, of all animals which have been inspected elsewhere at the time of slaughter, but which are required to be reinspected to determine subsequent spoilage or fitness for food before offering for sale in the city of Louisville. The health officer shall devise such method as may be deemed best for the time and manner of the collection of said fees and for checking up and accounting for same; and the sum so collected under the provisions of this ordinance shall be paid into the hands of the city treasurer and set apart solely for

the purpose of carrying out the inspection provided for in this ordinance and paying the expenses thereof.''

The petition and amended petition allege in substance the following facts: Appellant is engaged in the business of packing and selling meats and food products in the city of Chicago, and has a large number of customers in the city of Louisville. Sales to these customers are made by an agent on orders which are transmitted to the Chicago office for acceptance by appellant. Upon the acceptance of these orders, the sales are completed. Thereupon, the appellant delivers the goods ordered to a common carrier which acts as his agent in carrying the goods to the city of Louisville. Upon the arrival of the goods in the city of Louisville, they are delivered to a transfer company which acts as appellant's agent in completing the delivery. At no time after making of said orders, and before said goods are actually and in fact delivered to said customers, are they offered or exposed or in appellant's possession for sale. Nor do any of said meats arrive for sale in the city of Louisville before the actual delivery thereof to said customers. Prior to their arrival in Louisville, all said meats are regularly inspected and stamped by federal authority. Upon their arrival in Louisville, the inspection agents of the city refuse to permit appellant's agent to receive said meats and to deliver them to his customers until they are inspected pursuant to the ordinance above set out. Unless the inspection fees are paid at once, the city agents threaten to notify appellant's customers that they can not lawfully offer said meats and products for sale until the same shall have been inspected and approved by said inspectors. The petition concludes with a prayer that the city and its officers be enjoined from inspecting said meats and collecting fees therefor, and from notifying appellant's customers that they can not lawfully sell said meats until inspected by said officers.

It will be observed that section 1 of the ordinance in question, prohibits the sale and the offering, exposing, or having in possession, for sale, of any meat within the city of Louisville, which has not been inspected by federal, state, or municipal authority at the time of the slaughter, as well as the bringing of any such meat into the city for the purpose of sale except as otherwise provided in section 7. The same section makes it unlawful for any person, firm or corporation, ''to sell, expose, or

offer, or have in possession for sale for human consumption any meat which is in anywise not fit for such purpose.

Section 7 makes it unlawful to sell or offer, expose or have in possession for sale, any meat in the city which has not been inspected and stamped at the time of slaughter by federal, state, or municipal authority with certain exceptions not material to this controversy. The same section provides that nothing therein "shall exempt federal or other inspected meat from inspection as to fit condition for food when arriving for sale, or when exposed for sale in the city of Louisville."

The principal contention of appellant is, that the ordinance does not apply to him under the circumstances set out in the petition as amended. In support of this position he argues as follows: The sales made by him were completed in Chicago. The goods were there inspected and passed by federal authority. When they reached Louisville, they did not arrive for sale, nor were they in his possession for the purpose of sale. On the contrary they had already been sold and were in his possession solely for the purpose of delivery as alleged in the petition as amended. While it is true that the petition as amended so alleges, these allegations must be construed in the light of the further allegation that the goods were carried from Chicago to Louisville by a common carrier acting as appellant's agent and there delivered to a transfer company, which, acting as appellant's agent, delivered them directly to the customers to whom they were consigned, and that these deliveries were made in compliance with the terms and conditions of the orders of sale. In other words, appellant's pleadings clearly show that, notwithstanding the acceptance of the orders for the goods, the duty of delivering the goods devolved upon appellant. The ordinance makes it clear that nothing therein shall exempt federal or other inspected meat from inspection as fit for food, either when arriving for sale or when exposed for sale in the city of Louisville. Had it been intended to confine the local inspection to meats thereafter to be sold, the words "when exposed for sale," would have been sufficient. Some effect, therefore, must be given to the words "when arriving for sale." It was the evident purpose of the framers of the ordinance to provide for the inspection of such meats upon their

arrival in the city of Louisville and before they were scattered throughout the city to the various purchasers. To carry out this purpose, the words "arriving for sale" should not be given a narrow construction. Here the deliveries, pursuant to the contracts of sale, were as much a part of the sales as the acceptance of the orders, and in oui opinion, the words "arriving for sale" include all sales theretofore made when any act necessary to their completion remains to be done. Therefore when the goods in question reached Louisville for the purpose of delivery by appellant's agent to his customers, they "arrived for sale" within the meaning of the ordinance and were subject to inspection by the local authorities.

The point is further made that the ordinance does not provide from whom the fee shall be collected. In our opinion this contention is without merit. While the ordinance does not say who shall pay the fees, it clearly provides for their collection, and considering the ordinance as a whole, it contemplates that the fee shall be paid by the seller having the meat in his possession for the purpose of sale or when arriving for sale.

Section 10, article 1, of the Constitution of the United States, provides in part as follows:

"No state shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws; and the net produce of all duties and imposts, laid by any state on imports or exports, shall be for the use of the Treasury of the United States; and all such laws shall be subject to the revision and control of the Congress."

After specifying the fees to be collected, section 10 of the ordinance provides: "And the sum so collected under the provisions of this ordinance shall be paid into the hands of the city treasurer and set apart solely for the purpose of carrying out the inspection provided for in this ordinance and paying the expenses thereof." It is insisted that the ordinance in question violates the above provision of the federal constitution, because it authorizes the application of the net proceeds of fees collected on imported meats to the payment of the cost of local or intrastate inspection, instead of providing that the net proceeds of such fees shall be covered into the Treasury of the United States. Inspection involves expense and the power to fix inspection fees is left pri-

marily with the legislative body. Since the receipts and disbursements may so vary from time to time that the surplus of one year may be needed to supply the deficiency of another, the courts will not enter into any nice calculation as to the difference between cost and collection; nor will they declare the fees to be excessive, unless it is made clearly to appear that they are obviously and largely beyond what is needed to pay for the inspection service rendered. If, however, it is shown that the fees are disproportionate to the service rendered, or that they include the cost of something beyond legitimate inspection to determine quality and condition, the tax must be declared void, because such costs obstruct the freedom of commerce among the states. But in such inquiry, the courts treat the fees fixed by the legislative body for inspection proper as *prima facie* reasonable. D. E. Foot & Co. v. Stanley, 232 U. S. 494, 58 Law Ed. 698. This is not a case where it is apparent from the ordinance that the fees exacted for the inspection of imported meats exceed the reasonable cost of such inspection and the excess is apportioned to other purposes. The mere fact, therefore, that fees for interstate inspection, as well as those for intrastate inspection are apportioned to a common fund, and are jointly used to pay the entire cost of the inspection service, is not sufficient of itself to raise the presumption that the fees for interstate inspection are excessive. The petition in this case contains no allegation that the fees for interstate inspection service are excessive, or that they exceed the absolute cost of inspection. Being *prima facie* reasonable, it was necessary for appellant to allege that they were excessive. In the absence of such an allegation, we can not hold the ordinance invalid on the ground that the fees exacted for interstate inspection are unreasonable.

Judgment affirmed.