STATE, Respondent, vs. DAIRY DISTRIBUTORS, INC., Appellant. [Two cases.]

*December 7, 1934—January 8, 1935.*

*Edwin J. Gross* of Milwaukee, for the appellant.

For the respondent there was a brief by the *Attorney General* and *James J. Kerwin* of Milwaukee, special counsel, and oral argument by *Mr. Kerwin*.

ROSENBERRY, C. J. All of the questions to be considered arise in the second case, being State No. 36 here, C–4943, in the court below. The legislature of 1933 enacted what is known as sec. 99.165, Stats., relating to the emergency regulation of the distribution of milk in certain municipalities. By its terms the act applies to cities of the first, second, and third class and to cities, villages, and towns—

"adjacent to any city or village, in the same county, whose population is furnished with milk by any dealer operating generally in such cities of the first, second and third class."

The department of markets was created by sec. 1495—2, Stats. of 1921. By sec. 99.02, Stats. of 1929, a department of agriculture and markets was created in charge of three commissioners. By statutory definition "department" means department of markets (sec. 99.01); "commission" means the department of agriculture and markets (sec. 99.165). Sec. 99.165 provides that the commission shall have jurisdiction to inquire into matters relating to the supply, distribution, or sale of milk or cream; that—

"(3) . . . (b) If in any such inquiry the commission shall find that a public emergency exists, whereby the milk supply in any such cities, villages, and towns is likely to be interrupted or impaired in quality to an extent affecting the public health or convenience, or whereby the distribution,

sale, or disposal is subject to discriminatory, unfair, or unreasonable methods of competition, resulting in unjust or unreasonable prices to the producer or jeopardizing payment for his product, or the distribution, sale, or disposal is subject to practices which will eliminate or tend to eliminate competition therein, then the commission may, after notice and hearing, as provided in section 99.24, make general or special orders, prohibiting unlawful practices, and, for temporary emergency purposes.

"1. Prescribing the terms and conditions upon which milk or cream may be purchased, received, or handled.

"2. Prescribing or establishing, from time to time, and when necessary to the welfare of producers and consumers of milk or cream, and of the public, temporary schedules of prices at which milk or cream shall be bought and sold at wholesale and retail or either, subject to the requirement that all such prices shall be just and reasonable."

[Sub. (3) (c) provides for judicial review.]

"(4) The commission is vested with power and jurisdiction to carry out the provisions and intent of this section and may do all things reasonably necessary and convenient in the exercise of such power and jurisdiction."

The remainder of the section is not material here.

Under date of May 1, 1933, the commission entered an order (General Order No. 34), which, as subsequently amended, is set out in the margin.[1]

---

[1] Under authority of Chapter 64, Laws of 1933, and after a public hearing held in the city of Milwaukee, Milwaukee County, Wisconsin, pursuant to notice, on the 28th day of November, 1933, the Commissioners of the Department of Agriculture and Markets of the State of Wisconsin do hereby reaffirm and re-enact all provisions of General Order No. 34 not inconsistent herewith and until amended or repealed by an order of this Commission, and herein prescribes the terms and conditions upon which milk and cream may be purchased, received or handled in the city of Milwaukee and cities, villages and towns adjacent to said city of Milwaukee whose population is furnished with milk by dealers operating generally in said city of Milwaukee, and prescribes a temporary schedule of prices at which milk and cream shall be bought and sold at wholesale and retail or at wholesale or at retail.

(1) *It is therefore ordered,* That all milk dealers buying milk and cream for resale in the Milwaukee area pay the producers

Upon the complaint filed on May 9, 1934, a warrant for the arrest of the defendant corporation, Daniel S. Long, an employee, and John C. Schuman, president, was issued and served. The defendant Dairy Distributors, Inc., waived a preliminary examination, and it was bound over for trial in the municipal court. Thereupon the district attorney charged the defendant with violation of the order in eight counts. Counts 7 and 8 were subsequently dismissed, and will not be further noticed.

therefor not less than the following prices. . . . (omitted, not in question).

(2) *It is further ordered,* That each dealer buying milk for resale on the Milwaukee market shall mail to the Department of Agriculture and Markets of the State of Wisconsin, Madison, Wisconsin, a report not later than the 20th day of each and every month, giving the following information concerning the previous month:

Total amount of milk purchased of all classes during the month.

Pounds purchased at manufactured price as overbase or criticized milk.

Pounds purchased as emergency milk.

Pounds subject to the computation of the average price or pounds on which the percentage of fluid and surplus is to be figured.

Total pounds sold as fluid giving units as gallons, quarts, pints and half pints.

Total pounds of milk sold as cream giving units as gallons, quarts, pints and half pints.

Total pounds of surplus or manufactured milk.

Percentage used as fluid milk.

Percentage used as cream milk.

Percentage used as surplus or manufactured milk.

Fluid price per hundred pounds used in the computation for milk testing 3.5 per cent.

Cream price per hundred pounds used in the computation for milk testing 3.5 per cent.

Manufactured or surplus price per hundred pounds used in the computation for milk testing 3.5 per cent.

Average price paid per hundred pounds for milk testing 3.5 per cent.

And such other information as the department from time to time may require.

(3) *It is further ordered,* That the Commissioners of the Department of Agriculture and Markets, and their duly authorized agents, be given and have free access to each dealer's books and records at any time to check the accuracy of the reports.

(4) *It is further ordered,* That every person, firm or corporation selling fluid milk or cream in the Milwaukee area shall charge for

Count 1 charges the defendant with violation of the order in that it failed to contribute one-half cent per hundred pounds to the Milwaukee Dairy Council, for the month of March, 1934.

Count 2 charges a violation of the order in that the defendant failed to make a complete report for the month of January, 1934.

Count 3 charges a violation of the order in that the defendant failed to make a report for the month of February.

and receive not less than the following prices; and every person, firm or corporation buying fluid milk or cream in the Milwaukee area for human consumption shall pay therefor not less than the following prices: . . .

(5) *It is further ordered,* That no person, firm or corporation shall give, receive or contract for any special or secret discount or thing of value directly or indirectly in connection with the sale of milk that will enable the purchaser directly or indirectly to secure milk at a price lower than the above prices. . . .

That all dealers buying and all producers selling milk in this market contribute one-half cent ($\frac{1}{2}\phi$) per hundred pounds on all milk bought or sold, except criticized and excess or overbase milk, to the Milwaukee Dairy Council at 1633 North 13th Street, Milwaukee, Wisconsin, on or before the 20th of the month following the month in which the milk was delivered, to be used for general advertising and educational purposes, encouraging the consumption of milk and other dairy products, consistent with the agreement that existed prior to July 1, 1933, between the members of the Milwaukee Co-operative Milk Producers and the dealers who bought at least eighty per cent (80%) of the milk bought for resale on the Milwaukee market.

That no deductions can be made from the amounts due the farmers for their milk except the usual deductions for hauling, butter and other dairy products, dairy supplies, advertising, the usual deduction of a co-operative bargaining or marketing association for a service charge covering a test check service or a marketing expense when such deduction is authorized in writing by the producer, and any other deduction of a special nature to meet payments on a land contract, mortgage or other contract or agreement where the payment is made to a third party when such deduction has been approved by the department and is authorized or approved in writing by the producer. No deductions for capital stock or any other financing plan, whether accruing or not accruing to the dealer, directly or indirectly, will be allowed. Deductions from the amounts due the farmers will not be allowed in any form, when such deductions are used to defray the expense of the fieldman serving that dealer. . . .

Count 4 charges a failure to make report for the month of March.

Count 5 charges the defendant with violation of the order in that it did unlawfully fail to pay the farmers the ordered price for milk for the month of January.

Count 6 charges a violation of the order in that the defendant did unlawfully fail to pay the farmers the ordered price for milk for the month of February, 1934.

Upon this appeal the defendant challenges the judgments of conviction on the grounds:

(1) That the commission had no authority to require the defendant to pay one-half cent per hundred pounds to the Milwaukee Dairy Council as provided by Order No. 34; (2) that the defendant acted solely as distributing agent for the Watertown Milk Co-operative Association, organized under ch. 185, Stats.; that it purchased no milk, and therefore was not subject to the order by its terms, which required "all milk dealers buying milk and cream for resale in Milwaukee" to pay the producers not less than the prescribed price; (·3) that it was not a dealer buying milk for resale on the Milwaukee market, and therefore not subject to the provisions of Order No. 34, which requires the making of certain reports therein specified to the department.

The authority of the commission to fix a minimum price for sale to consumers and the price to be paid producers is not questioned in this proceeding.

We shall consider the questions raised in the order in which they are stated:

(1) The power of the commission to require all dealers buying, and all producers selling, milk in the Milwaukee market to contribute one-half cent per hundred pounds for milk bought or sold to the Milwaukee Dairy Council of Milwaukee. We have examined sec. 99.165 with great care, and we find no authority for the exaction of one-half cent per hundred pounds on all milk sold and produced as a contribu-

tion to the treasury of the Milwaukee Dairy Council. If such authority exists, it must be by virtue of the general authority granted by sub. (4), which provides that the commission is vested with power and discretion to carry out the provisions and intent of this section, and may do all things necessary and convenient in the exercise of such power and jurisdiction. This is evidently in aid of the power specifically granted to fix prices as prescribed in parts (1) and (2) already set out at length. We are in no way enlightened as to what relation this contribution has to the maintenance of the price of milk. It may be supposed that it is to be devoted, as is stated in the order, to general advertising and educational purposes, encouraging the consumption of milk and other dairy products. Whether or not a general advertising and educational campaign should be carried on for the benefit of the dairy industry is no doubt a question of management. The managers of any business are confronted with a very difficult problem when they attempt to determine what part of their funds should be devoted to advertising and allied educational purposes. The commission nowhere finds that the imposition of such an exaction is necessary to prevent discriminatory, unfair, or unreasonable methods of competition. We are unable to discover in the terms of the act any intention on the part of the legislature to incorporate the dealers, distributors, and producers of milk and authorize the commission to manage the entire industry so far as it relates to the area covered by the order. The commission nowhere finds the facts upon which its right to exercise the authority conferred is made dependent. It does not find that a public emergency exists or that discriminatory, unfair, or unreasonable methods of competition are resorted to which result in unjust or unreasonable prices to the producer; nor that any practice indulged in eliminates or tends to eliminate competition. General Order No. 34 speaks with the voice of a sovereign, and in the same manner that it might speak

if the commission were exercising all of the authority possessed by the legislature itself. No finding is made as to the jurisdictional facts which must exist as a condition of exercising the power delegated. If the legislature intends to confer upon administrative bodies the power not only to fix just and reasonable prices for milk and cream, but also the power to set up independent agencies for the promotion of the business aspects of the industry and compel all persons selling milk in the metropolitan area to contribute, that intent should be expressed in clear and unmistakable terms. The exaction made is not in any way related to the expense of administering or enforcing the law, nor is it paid into the public treasury, nor is the agency to which it is paid required to make any accounting to the contributors to the fund. We shall not determine whether or not the legislature itself could make a valid enactment of like character because the question is not presented upon this record. It is clear that the legislature has attempted to confer no such power upon the commission by sec. 99.165.

(2) and (3) Making of reports and payments to farmers. Consideration of sub. (2) of Order No. 34 makes it obvious that it applies only to dealers buying milk for resale. The Watertown Milk Co-operative Association was organized under ch. 185, Stats., and therefore occupies a somewhat favored position in the law as compared with ordinary business corporations. See *Northern Wis. Co-op. Tobacco Pool v. Bekkedal,* 182 Wis. 571, 197 N. W. 936; *Liberty Warehouse Co. v. Burley Tobacco Growers Co-op. Asso.* 276 U. S. 71, 48 Sup. Ct. 291, 72 L. Ed. 473; *Spencer Co-op. Live Stock S. Asso. v. Schultz,* 209 Wis. 344, 245 N. W. 99.

It appears that, as a result of the declining market for milk, the members of the Watertown Milk Co-operative Association, which under our statute is a nonstock, nonprofit organization, found itself without an adequate market for its product. For the purpose of establishing a market in the

metropolitan area, persons connected with the Watertown Milk Co-operative Association organized the Dairy Distributors, Inc., which is an ordinary business corporation organized under ch. 180, Stats. The members of the Watertown Milk Co-operative Association entered into a contract with the Co-operative to sell their milk through the Co-operative. In furtherance of the plan to establish direct marketing, the Watertown Milk Co-operative Association entered into a contract with the Dairy Distributors, Inc. The first clause of the contract provides:

"The association, . . . for the purpose of carrying out its plan of direct marketing, caused the Corporation to be organized under the laws of the State of Wisconsin, with its principal place of business at Milwaukee. It is understood that this agreement is entered into for the purpose of clarifying the set-up of the said direct marketing plan according to the original intention of the said parties."

In the contract, Dairy Distributors, Inc., is referred to as the Corporation. Paragraph 2 of the contract provides:

"The Corporation agrees to assist the Association which acts as sales agent for its members, in the disposition of so much of the milk which said Association receives from its members, and the products therefrom as the Corporation shall, from time to time, determine, and the Association does hereby agree to deliver, or cause to be delivered such milk and products therefrom as the Corporation shall determine."

Paragraph 3 provides:

"The Corporation agrees to use its best efforts to dispose of such milk, cream and other dairy products for the Association and its members, and at the end of each month the Corporation shall deduct that month's cost of operating its plant and milk routes and such other necessary expense to enable it to function, plus a reasonable amount for depreciation, from the total amount received by it from the sale of said milk, cream and other dairy products for such month, and pay the balance, if any, into the treasury of the Association to be used in accordance with the agreements between

the Association and its members. The said moneys deducted for depreciation shall be used for replacements and improvements of said Corporation's plant."

It appears from the evidence that in the beginning there were six stockholders of the defendant corporation, five of whom were directors of the Watertown Milk Co-operative Association. Subsequently this stock was transferred to the Watertown Co-operative apparently at a time after this prosecution was begun. The testimony of the officers of the defendant and the Watertown Co-operative shows that any moneys earned by the Corporation ultimately became the property of the Watertown Co-operative and that, either by way of cash payment or interest in the Corporation, the members of the Watertown Co-operative received everything derived from the sale of milk furnished by the members, less the expense of selling, which included, of course, the maintenance of the plant.

It is considered that the arrangement is nothing more than an arrangement by which the Corporation acted as the selling agent of the Watertown Co-operative. It was in no sense a purchaser of the milk furnished by the members of the Watertown Co-operative. It was as if the Watertown Co-operative itself distributed and sold the milk in a retail market and distributed the proceeds to its members. The incorporation of the defendant was a mere device for convenience of operation. In legal effect the distribution by Dairy Distributors, Inc., was the same as if an officer of the Watertown Co-operative had personally distributed the milk.

There is evidence, however, that Grade A milk was purchased in the open market around the Milwaukee area by defendant and that it was paid for at the ordered price. As to Grade A milk so purchased and resold, the defendant was within the terms of the order, and should have complied with the order and reported as to the amount of such milk bought and sold, etc. It appears from the evidence that the amount

of Grade A milk bought and sold is small, but it is sufficient, as the record stands, to make the Corporation subject to the order as to that quantity.

What has been said with respect to the obligation of the defendant to make reports is in a large measure relevant to a consideration of whether or not the defendant is liable because of failure to pay farmers the ordered price. If as we hold the defendant was a mere agent, acting for and on behalf of the Watertown Co-operative, subject to its control and direction, it could not be a dealer buying milk for resale on the Milwaukee market except as to Grade A milk. Under the statutory definition it was a distributor, a distributor being defined as any person, firm, or corporation . . . selling milk at wholesale or retail (within the prescribed area), but the order did not require reports from persons selling milk, only from each dealer buying milk for resale. Upon the oral argument it was urged that such an interpretation would make it impossible for the commission to enforce its orders. We see no reason why a distributor as defined in the statute might not be required to make reports, but the commission by Order No. 34 made no such requirement. The order is limited to persons buying for resale.

The commission having no power to require the defendant to make a contribution to the Milwaukee Dairy Council, the defendant not being a dealer buying milk for resale on the Milwaukee market except as to Grade A milk, it was not required to pay the members of the Watertown Milk Co-operative Association or the Co-operative the ordered price, and was not required to report except as to Grade A milk.

It may be fairly assumed from the record that what was sought both by the plaintiff and the defendant was an interpretation relating to the law governing the relation of the parties to this litigation; that the commission considered the defendant a dealer buying milk for resale. The defendant denied that it was such a dealer. While, as the record stands,

there is sufficient evidence to sustain a finding that the defendant was a dealer buying milk for resale, so far as the transactions relating to Grade A milk are concerned, it does not appear that that fact was relied upon by the state as a basis for conviction. Both in the briefs of counsel and in argument here the matters urged were the questions which we have already considered.

Upon the record, it is considered that the judgment in each case should be reversed, with directions to dismiss the information as to all counts except those relating to reports covering sales of Grade A milk. If the transactions are of sufficient consequence to warrant the state in pressing the information with respect to those counts, a retrial may be had. This disposition of the case will permit justice to be done to all parties.

*By the Court.*—The judgment in each case is reversed, and each of the causes is remanded with directions to dismiss the information in State No. 35, to dismiss the information in State No. 36 as to Counts 1, 5, and 6 and for further proceedings as to Counts 2, 3, and 4 as indicated in the opinion.