## Henry et al. v. Parrish et al.

March 26, 1948.
As modified on denial of rehearing May 28, 1948.

Gilbert Burnett and Lawrence G. Duncan for appellants.

Earl C. Frankenberger for appellees.

OPINION OF THE COURT BY CLAY, COMMISSIONER—Affirming.

This suit was brought to obtain a declaration of rights and injunctive relief against the Louisville and Jefferson County Board of Health (hereinafter referred to as "Board") and two of its officers. Plaintiff, appellee, is the owner of a retail restaurant business in Jefferson County. The object of the suit was to prevent the imposition and collection of a "permit fee" prescribed by the rules and regulations of the Board. The Chancellor adjudged the Board was without right or power to fix this charge, and permanently enjoined it and its officers from collecting any fee from plaintiff and others similarly situated.

The Board was organized in 1942 under the provisions of Chapter 41, Acts of 1942, Sections 212.350 to 212.630, and 212.990, KRS. This act created the Board as a public corporation, and gave it "exclusive control and operation"———"of all matters relating to institutions safeguarding the public health" in Louisville and Jefferson County, "and all other matters affecting public health," including "the adoption of remedial measures, and the enforcement of all laws and regulations affecting public health" therein. 212.370, KRS. The Board is given power to "make appropriate rules and regulations and do all things reasonable or necessary effectively to carry out the work and properly to perform the duties intended or required" by Chapter 41. 212.350, KRS.

The act further provides "it shall be the duty of the board created herein to make and enforce all reasonable regulations controlling or affecting the health of citizens and residents" of Louisville and Jefferson County, in conformity with the provisions of Chapter 41, "the laws of the Commonwealth of Kentucky, the rules and regulations of the State Board of Health of Kentucky, and

the ordinances of said municipalities now or hereafter in effect." 212.600, KRS.

The Board is vested with the functions, obligations, powers, and duties of the county and city boards or departments of health. 212.350, KRS. Provision is made for the transfer to it of all property of the city and county used exclusively and directly in the maintenance of public health, including hospitals and clinics. 212.-360, KRS. Since 1942 the Board has operated and maintained the Louisville General Hospital, Waverly Hills Tuberculosis Sanatorium, clinics and health centers; and has generally carried out an extensive program in the care and protection of the public health.

The finances of the Board are provided by Section 212.470, KRS, which declares: "In order that there may be a fund of not less than $1,000,000 annually to carry out the purposes" of the act, the fiscal court of the county is required to levy annually a tax which will produce a sum of not less than $250,000, and the city is required to levy annually a tax to produce a sum of not less than $750,000, which taxes shall be paid to the Board. The statute also permits the Board to receive and accept gifts, donations, contributions, or endowments. 212.490, KRS.

In 1942 the Board adopted rules and regulations governing all food handling establishments in Louisville and Jefferson County. These made provision for the periodic sanitary inspection of such establishments. Inspections were conducted until August 15, 1947, when it became evident that the funds of the Board were inadequate to continue this phase of health service. A plan was then devised and put into effect by Rule IX requiring food establishments to obtain permits authorizing the sale of food. Rule X, the one here in controversy, provided that every food establishment should pay to the Board an annual permit fee of not less than $12 nor more than $60, depending upon the number of persons employed in each place of business. It is specifically declared that "These fees shall be used only for the execution of the provisions" of the Board's rules and regulations, and the "base price of the permit fee" shall be fixed in conformity with the "cost of inspection."

Plaintiff does not complain of the requirement of Rule IX that a permit be obtained in order to conduct the business of food handling or dispensation. This rule is perhaps justified under Section 217.280, KRS, or the regulations of the State Board of Health, or the general provisions of Chapter 41; but we are not called upon to, and do not decide, that question. The only issue we have before us is whether or not the Board has authority to require of food establishments the payment of any fee to help defray the cost of administering its health regulations. The reasonableness of the fee is not in controversy, as the question is one of power and not the extent of its exercise.

The Board takes the position that: (1) It is specifically granted power to promulgate rules and regulations regarding the public health, (2) this authorizes the exercise of a police power, and (3) the exaction of fees to defray the cost of carrying out this particular inspection program is a necessary incident to the exercise of that power. The Board asserts that it has "the same power to enact binding regulations relating to the public health that legislative bodies of municipal corporations proper have."

At the outset it is apparently conceded that a charge of this sort is not a tax, and our question does not involve the taxing power. See Pure Milk Producers & Distributors Ass'ns et al. v. Morton et al., 276 Ky. 736, 125 S. W. 2d 216; and Hartman et al. v. City of Louisville et al., 282 Ky. 487, 138 S. W. 2d 948. We shall also accept the general proposition that a municipality has the implied right in the exercise of police power to impose reasonable charges to cover the cost of supervising businesses subject to regulation. See 38 Am. Jur., Municipal Corporations, Sections 347-352, and Boyd v. City of Louisville, 178 Ky. 354, 198 S. W. 927. As far as we have been able to determine, however, the particular question we have before us is quite novel.

There are two aspects of the problem: (1) Whether or not the imposition of a permit fee involves the exercise of legislative power which may not be constitutionally delegated to the Board, and (2) if the power could be delegated, whether or not it was in fact granted by Chapter 41.

■ It is fundamental that the right to fix these fees is an incident to the exercise of a police power. Such power is sovereign and legislative. It is an inherent and plenary authority vested in the Commonwealth, given expression by legislative enactment. It is the tap root of government, out of which grow internal regulations necessary to preserve the public order, health, safety, and morals. See Cooley's Constitutional Limitations, 8th ed. Vol. 2, Chapter XVI; 11 Am. Jur., Constitutional Law, Section 245, 247; Whitney et al. v. Newbold et al., 270 Ky. 209, 109 S. W. 2d 406; Sweet v. Rechel, 159 U. S. 380, 16 S. Ct. 43, 40 L. Ed. 188.

It has long been recognized that certain police powers may be, and properly should be, delegated to municipalities in order that they may carry on local self government. See 37. Am. Jur., Municipal Corporations, Section 279; City of Hazard v. Duff et al., 287 Ky. 427, 154 S. W. 2d 28; Nourse v. City of Russellville et al., 257 Ky. 525, 78 S. W. 2d 761. In Barrow et al. v. Bradley, Mayor, et al., 190 Ky. 480, 227 S. W. 1016, the Court stated, at page 482 of 190 Ky., at page 1018 of 227 S. W.:

"When, therefore, the power to create municipalities is vested in the state Legislature, the power is implied if not expressed to confer and define local legislative power, and is practically unlimited in the absence of constitutional restrictions."

Further the opinion states, at page 483 of 190 Ky., at page 1018 of 227 S. W.:

"It is apparent therefore that our state Legislature has express power to delegate to cities and towns all powers needful for local self-government."

See also Baker, Mayor, et al. v. Combs, 194 Ky. 260, 239 S. W. 56, and City of Pineville v. Marshall et al., 222 Ky. 4, 299 S. W. 1072, recognizing the constitutional right of the state legislature to delegate legislative authority to a municipality; and Hahn v. City of Newport et al., 175 Ky. 185, 194 S. W. 114, wherein it was recognized that the preservation of the public health called for legislative functions in the exercise of police power.

On the other hand, Sections 27 and 28 of our Con-

stitution forbid the delegation of legislative power to administrative boards or agencies, which are a part of the executive branch of state government. In Goodpaster, Director of Insurance, v. Southern Ins. Agency, Inc., 293 Ky. 420, at page 423, 169 S. W. 2d 1, at page 3, we stated:

"Without doubt, the Legislature may authorize a board or administrative officer, such as appellee, in charge of some governmental affairs, to make police regulations, but it cannot abdicate its own police power on any subject and confer such power on an officer or a board to his or its uncontrolled discretion."

In the recent case of Veail et al. v. Louisville & Jefferson County Metropolitan Sewer Dist. et al., 303 Ky. 248, 197 S. W. 2d 413, we recognized that legislative power could not be delegated to a Sewer District, and administrative agency. See also Panama Refining Co. v. Ryan, 293 U. S. 388, 555 S. Ct. 241, 79 L. Ed. 446.

It is true that a state legislature may authorize boards and other agencies to exercise an administrative discretion in the application of laws enacted by it. As stated in Craig, et al. v. O'Rear, et al., 199 Ky. 553, at page 560, 251 S. W. 828, at page 831:

"Therefore when we say that the Legislature may not delegate its powers, we mean that it may not delegate the exercise of its discretion as to what the law shall be, but not that it may not confer discretion in the administration of the law itself."

An administrative body may, of course, properly promulgate subordinate rules. But in this case the action of the Board constituted the exercise of legislative power in enacting the paramount rule. The Board actually pioneered in creating a liability not sanctioned by the lawmaking authority of the state, city or county. It invaded a new field of compulsory contribution where the ground had not been broken by a legislative body. It had no general authority of any kind to impose on any person or institution the obligation of financing the cost of its inspection services. In the absence of such authority the Board's discretion would be without limit, except as to reasonableness. It is, therefore, evident that the broad power to promulgate the rule here in-

volved, subject to no legislative standard or guide, could not be delegated to the Board under fundamental constitutional limitations.

■ Assuming, however, that the fixing of fees did not involve the exercise of legislative discretion and that this incident of the police power could be delegated to an administrative body, our next question is whether or not the Legislature, by the enactment of Chapter 41, authorized the Board to make such a rule. Clearly no specific authority is given, and if any exists, it must be implied.

The argument of the Board that it has the same power as a municipality is difficult to sustain. From the foregoing discussion, it is apparent that the implied powers of a municipality are much broader than those of an administrative agency. This is particularly so with respect to the subject matter under consideration, since the protection of public health is one of the most important of municipal functions. See Nourse v. City of Russellville et al., 257 Ky. 525, 78 S. W. 2d 761.

Let us, however, examine more closely the power of the City of Louisville which might justify its imposition of these charges. Section 83.010, KRS, provides that the inhabitants of a city of the first class shall constitute a corporation "with power to govern themselves by any ordinances and resolutions for municipal purposes not in conflict with the Constitution or laws of this state or of the United States." Under such statutory delegation, this Court has recognized that the police power of the City of Louisville is quite broad. See City of Louisville v. Wehmhoff, &c., 116 Ky. 812, 76 S. W. 876, 79 S. W. 201; Maupin v. City of Louisville et al., 284 Ky. 195, 144 S. W. 2d 237. It was by virtue of the existence of this police power vested in the City that we upheld the imposition by ordinance of an inspection fee in Hartman v. City of Louisville, 282 Ky. 487, 138 S. W. 2d 948. For the general right of a municipality to provide for the collection of fees for food inspection, see cases from other jurisdictions cited and discussed in 127 A. L. R. 330.

It is obvious that a municipality is a governmental unit whose principal duties require the exercise of a

broad police power in order to safeguard the public health, welfare, safety and morals of the community. It then has, by implication, the right to exact fees in the exercise of that power. On the other hand, a board such as we have involved here is an administrative agency created to perform one specific function. The scope of its authority is necessarily limited. If there is any fair or reasonable doubt concerning the existence of the particular power here sought to be invoked, it should be resolved against the Board. See Board of Education of City of Newport v. Scott, 189 Ky. 225, 224 S. W. 680:

The applicable principle is well stated in 42 Am. Jur., Public Administrative Law, Section 99:

"Administrative rules and regulations, to be valid, must be within the authority conferred upon the administrative agency. The power to make regulations is not the power to legislate in the true sense, and under the guise of regulation legislation may not be enacted. The statute which is being administered, may not be altered or added to by the exercise of a power .to make regulations thereunder. A rule which is broader than the statute empowering the making of rules cannot be sustained. Administrative authorities must strictly adhere to the standards, policies, and limitations provided in the statutes vesting power in them. Regulations are valid only as subordinate rules and when found to be within the framework of the policy which the legislature has sufficiently defined."

In State v. Dairy Distributors, Inc., 1935, 217 Wis. 167, 258 N. W. 386, an agency known as the Department of Agriculture and Markets was given authority to prescribe terms and conditions for the handling of milk or cream in the Milwaukee area and to fix the prices thereof. The Department was further vested with power and discretion to do all things necessary and convenient to carry out the above objectives. The Department entered "General order No. 34" requiring dealers and producers to contribute to a Dairy Council ½c per hundred pounds on all milk bought and sold, to be used for advertising and educational purposes which would encourage the consumption of dairy products. In declaring this order void as beyond the power of the De-

partment, the Court stated as follows, at page 389 of 258 N. W.:

"General order No. 34 speaks with the voice of a sovereign and in the same manner that it might speak if the commission were exercising all of the authority possessed by the Legislature itself. No finding is made as to the jurisdictional facts which must exist as a condition of exercising the power delegated. If the Legislature intends to confer upon administrative bodies the power not only to fix just and reasonable prices for milk and cream, but also the power to set up independent agencies for the promotion of the business aspects of the industry and compel all persons selling milk in the metropolitan area to contribute, that intent should be expressed in clear and unmistakable terms."

A careful review of all of the powers granted to the Board under Chapter 41 convinces us that its primary functions are the administration and execution of laws, ordinances, and orders of legislative bodies. There is no reasonable implication in the act that the Board is to take over any financing functions of the state, the City of Louisville or Jefferson County. On the contrary, the statute itself specifically creates a fund to defray the expenses of the Board. We must conclude that the Legislature did not contemplate or intend that the Board should on its own initiative and by its own rules exact tribute from persons or institutions subject to its regulations for the purposes shown by this record.

We cannot accept the argument that the Board needs the money to perform all of its functions. All governmental bodies at the present day seem to need vastly more money. It is almost a forgotten art for these institutions to live within their budgets. If the Board cannot perform all of its functions with the money which the Legislature has provided, it must simply curtail its services. The only other alternative is to obtain increased appropriations from the Legislature or from the city or the county. The Board does not, however, possess the right or power to finance its own activities by the method here attempted.

The judgment of the Chancellor was in all respects correct, and the judgment is affirmed.