**CHARLES C. PARKS COMPANY, Appellant,**

**v.**

**Robert H. ALLPHIN et al., Comprising the Kentucky Tax Commission, Appellee.**

Court of Appeals of Kentucky.

Nov. 9, 1956.

Elmer Gains Davis, Jr., Smith, Reed & Leary, Frankfort, for appellant.

Bradford T. Garrison, Dept. of Revenue, Frankfort, for appellee.

MOREMEN, Judge.

Appellant, Charles C. Parks Company, a Tennessee corporation, applied to the Department of Revenue for permission to report, by separate accounting, its income attributable to business in Kentucky for

the fiscal years ending April 30, 1951 and April 30, 1952.

The permission was denied, and, upon petition by the taxpayer to the Kentucky Tax Commission, the Commission entered an order that separate accounting, under the facts shown, was impracticable and did not reflect the true income of the corporation.

Upon appeal to the Franklin Circuit Court, a judgment was entered sustaining the order of the Tax Commission, and from that judgment this appeal is prosecuted.

■ Ordinarily, the taxable income of a corporation, which does business within and without this state, is determined by the application of the statutory formula set forth in KRS 141.120. Under this formula, by the consideration of several factors, is reached a taxable income which, as a general rule, is fair to all parties.

The statute has since been amended, Chapter 79, Acts of 1954, but at the time this controversy arose, subsection (2) of KRS 141.120 read in part:

"If the trade or business is carried on partly within and partly without this state—separate accounting shall be deemed impracticable and prohibited unless the taxpayer shows the department prior to filing that the actual amount of net income received from business in Kentucky is determinable by separate accounting—* * *."

The purpose of this statute, we suppose, was to permit taxation based upon actual concrete facts instead of those ascertained by an abstract formula so that if the facts could actually be obtained by separate accounting, it would not be necessary to estimate the correct amount of tax. Under the foregoing section of the statute it would seem to be enough if the taxpayer made proper showing that his business was of the nature and character which would permit separate accounting. However, the Department of Revenue added to the requirements of the statute by issuing the following Regulation, NC–255:

"Before the department will grant permission to determine that income by separate accounting, the taxpayer must submit cogent evidence that the prescribed formula results in an arbitrary allocation wholly out of accord with actual income earned within this state; that its operations are of a nature especially adapted to separate accounting, and that the accounting records maintained clearly reflect the net income on this basis. After considering the facts, the department will render a decision to the taxpayer as to the method of reporting to be used in determining the net income earned within the state."

The statute requires that the taxpayer demonstrate that the actual amount of net income is determinable by separate accounting.

The regulation requires the taxpayer to demonstate that (a) the separate accounting records clearly reflect the net income, (b) the operations are of a nature especially adapted to separate accounting, and (c) the prescribed formula results in an arbitrary allocation wholly out of accord with actual income earned within this state.

Items (a) and (b) are not a departure from the terms of the statute. Item (c) is an additional requirement.

The circuit court, by the judgment entered, held (1) that Revenue Department regulation NC–255 was valid, and (2) that appellant, Charles C. Parks Company, had failed to meet the requirements of any of the items of the statute or regulation.

There is no dispute concerning the facts upon which the court based the foregoing conclusions of law. They are:

Appellant, Charles C. Parks Company of Gallatin, Tennessee, operates a grocery business which consists of four stores or branches, two in Tennessee and two in

Kentucky. Each of the four stores operated by taxpayer has its own separate sales organization. The two Tennessee stores are larger and do a greater volume of business than the two Kentucky stores. Each store has its own office force consisting of a store manager, one or more bookkeepers and one or more truck drivers and salesmen. Each salesman is permitted to extend credit to his customers in accordance with his judgment as to the financial integrity and reliability of the customers. Salesmen are compensated by both salary and commission. In short, except for centralized purchasing and accounting, operations of the company are decentralized and each store is operated as a separate entity.

Accounts receivable are maintained at each store and payments thereon are received there and deposited in a local bank. All sales, receipts and expenditures are reported to the Gallatin, Tennessee, office where the general books of accounting are kept. Sales by each branch are recorded separately in the general books and returns and allowances are likewise deducted separately so that a net sales figure for each branch can be ascertained.

All or practically all of the purchases for all four stores are made from Gallatin by Mr. Charles C. Parks who is President and General Manager.

Monthly inventory reports are forwarded to Mr. Parks by each of the stores and purchases are thereby made in accordance with the indicated needs. Whenever possible, purchases are made for shipment in carload lots. Merchandise is shipped directly to the store at which it is needed. If that store does not need an entire carload, a portion thereof may be transferred by company-owned trucks to another store which might also need less than a carload of that particular item. Invoices for this merchandise are received and paid at Gallatin and are then charged to the receiving store at the net invoice cost. Transportation costs are also charged to the store receiving the merchandise. Not more than ten per cent of purchases are transshipped from one store to another and in such cases the receiving store is charged with the actual cost of operating the truck used for that purpose. There is no intra-company profit on transfers of merchandise.

The company deals only in staple commodities so that there is no spoilage, and its volume of sales is such that it would be able to purchase in carload lots, if it had no stores in Kentucky. Savings derived from volume purchasing are all related to carload lots, so that except for a small freight differential, the unit price is the same for one carload as it is for ten. All expenses which are identifiable as the direct expenses of a given store are charged to that store.

Except for a small petty cash fund at each branch, operating expenses are paid and accounted for at Gallatin. Operating accounts for each store are maintained separately and payrolls are charged to that store.

The general and administrative expenses incurred at Gallatin for the benefit of all the stores and which cannot be attributed to any one store are allocated between the various stores according to the ratio which sales of that store bear to the total corporate sales. In the fiscal year ending April 30, 1952, these items aggregated $49,129.26, of which $25,000 was Mr. Park's salary. Interest of $14,380.61 on borrowed working capital, the benefit from which was received by all of the four stores, was allocated in 1952 in the same manner as general and administrative expenses.

The total sales of the corporation during the year ending April 30, 1951, were $6,962,943.04. Sales in Kentucky for that period amounted to $2,283,174.70. Actual net profit derived from the two Kentucky stores, as shown by the company's books, was $2,423.47. Income allocated to Kentucky by the order appealed from using the statutory formula was $11,493.46.

In addition to the undisputed facts, the trial court had before it the testimony of Marlin Connelley, a certified public accountant who, for many years, had audited the books of Charles C. Parks Company and made tax returns for it. He testified that the Company had expended a great deal of time, effort and expense—not for tax purposes or for Kentucky income tax purposes alone—in order for the company to know what it was doing. With each audit, he furnished a profit and loss analysis. He stated that the separate accounting system employed correctly reflected the business transacted.

 In view of the facts found and the positive testimony of an expert that business done in Kentucky was determinable by separate accounting, we are compelled to reach a different conclusion from the one reached by the trial court. Appellee introduced no evidence to the effect that the accounting practice used by appellant was not in accord with good accounting practices. The whole import of the testimony points inevitably to the fact that this is a case where the terms of the statute are satisfied and this fact alone, we think, is enough to decide this case. However, the trial court found that Revenue Regulation NC–255 was valid and apparently was of the opinion that the taxpayer had failed to "submit cogent evidence that the prescribed formula results in an arbitrary allocation wholly out of accord with the actual income earned within this state." We think the figures, which we have quoted above, wherein application of the formula showed income allocated to Kentucky to be in the sum of $11,493.46, while the actual net profits derived from the two Kentucky stores was $2,423.47, constitute a difference sufficient to show that the formula results in an arbitrary allocation.

We, therefore, find it unnecessary to discuss the question of whether or not the Regulation is valid, other than to say that we are of opinion that the Department had no power to add to or subtract from the standard set up by the statute itself. See Bloemer v. Turner, 281 Ky. 832, 137 S.W.2d 387; Robertson v. Schein, 305 Ky. 528, 204 S.W.2d 954; Henry v. Parrish, 307 Ky. 559, 211 S.W.2d 418.

We believe that the appellant taxpayer should be permitted to report its income in Kentucky on the basis of separate accounting under the facts shown.

The judgment is therefore reversed.