## LOUISVILLE BOARD OF REALTORS and Alex B. Hampton, Appellants,

v.

## CITY OF LOUISVILLE, George Siemens, Louisville Board of Aldermen, Walter Bledsoe, and Louisville Tenants Union, Appellees.

Court of Appeals of Kentucky.

June 11, 1982.

Richard M. Trautwein, W. David Kiser, Barnett & Alagia, Louisville, for appellants.

Max E. Simmons, Director of Law, George S. Schuhmann, Asst. Director of Law, City of Louisville, Louisville, for appellees City of Louisville, George Siemens, and Louisville Bd. of Aldermen.

Walter R. Butt, III, Louisville, for appellee Louisville Bd. of Aldermen.

Robert Frederick Smith, Legal Aid Society, Inc., Louisville, for appellees Walter Bledsoe and Louisville Tenants Union.

Before GANT, VANCE and WILHOIT, JJ.

WILHOIT, Judge.

This is an appeal from those portions of a judgment of the Jefferson Circuit Court which held inspection provisions of the 1975 City of Louisville Housing Code to be constitutional under the Fourth Amendment to the United States Constitution and Section 10 of the Kentucky Constitution, and which held the provisions of the Code imposing an inspection fee not to violate the equal protection clause of the Fourteenth Amendment to the United States Constitution.

Before going forward to discuss the substantive issues raised on this appeal, we must consider the appellees' contention that this appeal has been rendered moot by the repeal of the 1975 Housing Code and the adoption of a new Code in 1979. A copy of the 1975 Code does not appear in the record before us, although the record does contain a copy of the 1979 Code. From the statements of the parties made in their briefs and at oral argument, as well as statements contained in the record, we conclude that the provisions of the 1975 Code which are sought to be challenged in this appeal are very similar, if not identical, to provisions found in the 1979 Code. For this reason, we are of the opinion that the substantive issues raised should be determined since the City of Louisville is likely to continue the same practices under the same circumstances now as it did under the 1975 Code. *Commonwealth ex rel. Stephens v. Isaacs,* Ky. App., 577 S.W.2d 617 (1979).

Both the 1975 and 1979 versions of the Code require that the owner of a "dwelling or dwelling unit" obtain a certificate of compliance or temporary certificate of compliance from the City's housing director before advertising for rent or renting a "dwelling or dwelling unit." The purpose of the certificate is to ensure compliance with the City's housing code. To obtain a certificate, the owner of the premises must submit a written application to the housing director requesting an inspection. This application must be accompanied by payment of an inspection fee which ranges from

$12.00 to over $260.00. Upon receipt of the application, the housing director is to cause the premises to be inspected within fourteen days. If, without fault of the owner, no inspection is made within fourteen days, the owner may rent the premises until an inspection is conducted. A certificate of compliance, depending upon the location of the property and other factors, expires in twelve to sixty months, after which the owner must apply for a renewal. The renting of a unit without having applied for an inspection is punishable by a fine of $25.00 to $100.00, by a jail term of up to fifty days for each day of failure to apply, or both.

The appellants contend that the requirement of the Housing Code that owners of rental property permit the property to be inspected to obtain a certificate of compliance or be subjected to fines or jailing for failure to obtain a certificate violates both the Fourth Amendment and Section 10 of the Kentucky Constitution by coercing the owners to consent to unreasonable searches and subjecting tenants occupying the premises at the time of inspection to unreasonable searches.

The trial court found that the Housing Code was "designed as a licensing program to upgrade substandard housing, alleviate harmful matters such as lead-base paint and defective gas space heaters, and establish basic sanitary standards for health reasons[.]" It likened the purpose of the Housing Code to that of other "regulatory programs such as those requiring a plumbing inspection, an electrical inspection, and a heating inspection, which ... have long been upheld[.]" The court concluded that the inspection required to obtain a certificate was reasonable and not violative of either the United States or Kentucky Constitution. In support of this conclusion it cited *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967); *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970); and *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972). In an effort to reach the proper solution to the issue presented, we have reviewed these decisions by the United States Supreme Court as well as its decisions in *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978).

In *Camara*, the Court held that the tenant occupant of an apartment had a right under the Fourth Amendment to refuse to consent to the inspection of his apartment by a city housing inspector who had no search warrant authorizing him to inspect the premises. It observed that except in certain carefully defined classes of cases a nonconsensual search of private property is unreasonable unless authorized by a valid search warrant. The other cases mentioned above involved searches of commercial rather than residential property. The Supreme Court itself summarized all of these cases as standing for the proposition that the Fourth Amendment's prohibition against unreasonable searches applies to administrative searches of private commercial property, but, unlike searches of private homes which generally must be conducted pursuant to a warrant to be reasonable under the Fourth Amendment, legislative schemes authorizing warrantless administrative searches of commercial property do not necessarily violate the Fourth Amendment. *Donovan v. Dewey*, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981). It explained that

> [t]he greater latitude to conduct warrantless inspections of commercial property reflects the fact that the expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home, and that this privacy interest may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections.

452 U.S. at 598, 101 S.Ct. at 2538, 69 L.Ed.2d at 268–69 (citation omitted).

The question before us is made more complex because we are dealing with property which is commercial in nature as far as

the owner or landlord is concerned,[1] but which becomes the home of the tenant once he occupies it. For this reason, it seems clear that the owner's expectation of privacy in such property should be considered to differ somewhat from that of the occupying tenant, and what might be reasonable as to the former under the Fourth Amendment would not necessarily be reasonable as to the latter. In *Camara v. Municipal Court, supra,* the attempted warrantless inspection was of a tenant-occupied apartment without the tenant's consent. The inspection was being made on a random basis, and the tenant had no way of knowing whether the inspection was authorized or what its limits should have been. Here, we have landlords who have freely elected to rent out their property to others; both the Housing Code and the application for a certificate of compliance make clear that in applying for the certificate the landlord is consenting to an inspection of the premises to be rented. The purpose of the inspection and thus its necessary scope are evident from the provisions of the Code, while the time in which the inspection must be made before the property may be rented is limited to fourteen days. We agree with the trial court that insofar as the Louisville Housing Code requires a landlord to consent to an inspection of premises prior to renting out those premises, the landlord's rights under the Fourth Amendment to the United States Constitution are not abridged. We likewise agree with the trial court that this requirement of the Housing Code does not violate Section 10 of the Kentucky Constitution. *Mansbach Scrap Iron Co. v. City of Ashland,* 235 Ky. 265, 30 S.W.2d 968 (1930). *Cf. Sullivan v. Brawner,* 237 Ky. 730, 36 S.W.2d 364 (1931).

Insofar as the rights of tenants to be free from unreasonable searches is concerned, we should first observe that under the scheme of the Code, tenants are not permitted to occupy the premises until after the inspection has taken place, or until after fourteen days have passed from the landlord's application for a certificate. In the first situation, no tenants would be occupying the premises, so no problem would be presented. If the landlord had permitted the premises to become occupied before issuance of the certificate or before the lapse of fourteen days, then he could hardly complain if he was subjected to the penalties provided for violation of the Code. If a warrantless inspection were attempted after the premises became tenant-occupied following a lapse of fourteen days, then a problem would certainly be presented. We do not agree with the trial court that the landlord's consent to an inspection can justify a warrantless inspection of premises after they have become the home of a tenant. *Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), and we do not believe that under the cases already discussed such an inspection could be made absent consent of the tenant or an emergency.

We have limited our consideration of the reasonableness of the Housing Code under the Fourteenth Amendment and Section 10 of the Kentucky Constitution to the specific questions raised. To do more would render this in part an advisory opinion and force us to speculate about matters concerning the enforcement of the Code which are not in the record.

The final contention made by the appellants is that the Housing Code's requirement that each landlord pay an inspection fee is an unreasonable exercise of the City's police power and is therefore void. The basis for this contention is the evidence in the record that the City does not have sufficient inspectors to inspect each rental unit for which an inspection fee is exacted. In fact, there is evidence that in the first three years following the adoption of the 1975 Housing Code only "approximately 50 per-

---

1. The 1979 Code exempts one renting out less than three rooming units located in his own dwelling and one temporarily renting out a dwelling unit constituting his principal residence from its certificate of compliance provisions. *See Commissioners of the Sinking Fund v. Estate of Doyle,* Ky.App., 573 S.W.2d 932 (1979), for a discussion of the renting of real estate as a business for license (occupational) tax purposes.

cent" of the rental units covered by the Code had been inspected.

The unreasonableness of a license tax or fee imposed under the police power of a municipality is to be judged from the perspective of whether the amount exacted under the particular facts of a case is in excess of that which is necessary to compensate the municipality for issuing the license and for carrying out whatever supervision or inspection of the licensee is necessary. *Roe v. Commonwealth*, Ky., 405 S.W.2d 25 (1966); *City of Henderson v. Lockett*, 157 Ky. 366, 163 S.W. 199 (1914). *See also Boyd v. City of Louisville*, 178 Ky. 354, 198 S.W. 927 (1917). There is no evidence in the record establishing that the fees charged here exceed the cost to the City of Louisville for inspecting the respective rental units and insuring their compliance with the Housing Code. If there were evidence that the City had by design systematically failed or refused to make inspections, a question might be raised as to whether the fee charged amounted to a tax imposed exclusively as a revenue measure, and we would be required to view it from a somewhat different perspective. However, the record does not indicate any such design or action. If, as argued by the appellants, an individual becomes entitled to an inspection by payment of the fee (a question upon which we express no opinion) and no inspection is made, at most this would give rise to an individual claim to require an inspection or a refund. We do not believe that the good faith failure of the City for lack of manpower to inspect each of the units for which an inspection fee is paid renders the inspection fee provisions of the Housing Code void as unreasonable. As quoted by the trial court, "it is not the function of the courts to determine whether the city in the exercise of its police power has undertaken more than it can perform." *City of Horse Cave v. Pierce*, Ky., 437 S.W.2d 185, 186 (1969).

The judgment of the trial court is affirmed except as to that part of the judgment which holds that a landlord's consent to an inspection can justify a warrantless inspection of tenant-occupied premises. That part of the judgment is reversed.

All concur.