SHOBER v. INDUSTRIAL COMMISSION et al.

No. 5879.   Decided May 25, 1937.   (68 P. [2d] 756.)

*Gaylen S. Young,* of Salt Lake City, for plaintiff.

*Joseph Chez,* Atty. Gen., and *F. A. Trottier,* of Salt Lake City, for defendants.

LARSON, Justice.

Certiorari to the Industrial Commission. The only question presented is: Are services rendered by a chiropractor within the term of "medical services," as that term is used

in the Workmen's Compensation Act? Plaintiff, an employee of the State Road Commission, while assisting to lift a gravel spreader onto a truck, strained, wrenched, or hurt his back. It caused him considerable pain, and for three days he was off work. He was given eight chiropractic treatments by Carl O. Larson, a duly licensed chiropractor, who adjusted or manipulated the vertebrae in the lower cervical and upper dorsal regions of the spine, and a bill for $16 for this service was presented.

The commission found the facts of injury in employment, and the service rendered by the chiropractic, but denied plaintiff's claim for the expense of chiropractor services on the ground that such services are not "medical services" within the provisions of the Workmen's Compensation Act (Rev. St. 1933, 42-1-1 et seq.). The provisions of the act pertinent to this inquiry are sections 42-1-43 and 42-1-75, R. S. Utah 1933, as follows:

42-1-43. "Every employee * * * who is injured * * * in the course of his employment * * * shall be paid, such compensation for loss * * * and such amount for *medical, nurse and hospital services* and medicines * * * as is herein provided." (Italics ours.)

42-1-75. "In addition to the compensation provided for in this title the employer or insurance carrier * * * shall in ordinary cases also be required to pay such a reasonable sum for *medical, nurse and hospital services, and for medicines,* and for such artificial means and appliances as may be necessary * * * not exceeding the sum of $500." (Italics ours.)

Does then the term "medical services" include chiropractic adjustments? Chiropractic is defined by the statute (79-1-5, subsec. 5) as "palpating and adjusting the articulation of the spinal column by the hands only." Stated in the vernacular of the layman, it consists of examining the spine of the patient to determine which vertebra is, or which the chiropractor believes is, displaced or out of alignment with the others; and by pressure upon such vertebra, by the hands only, pushing or forcing it back into its proper position or alignment. In short, it consists of reducing a slight or par-

tial dislocation of the vertebra. It is defined by the International Ency.:

"A system of manipulations which aims to cure disease by the mechanical restoration of displaced or subluxated bones, especially the vertebrae, to their normal relation. It is claimed that slight displacements of the spinal segments are frequent, that they constrict important nerves and arteries, and that chiropractic adjustment corrects the displacement and relieves the pressure."

It is, as stated by Nelson's Ency., "a system of therapeutic treatment for various diseases through adjusting the articulations of the human body, particularly the ■ spine," and by so relieving the pressure on the nerves, increases the flow of vital nerve forces to the afflicted part and enables the body to resist and overcome the diseased condition. This is clearly practicing medicine within the purview of section 79-9-17, R. S. Utah 1933, which reads:

"Any person who shall diagnose, treat or profess to treat, or prescribe or advise for, any physical or mental ailment of, or any physical injury to, or any deformity of, another; * * * shall be regarded as practicing medicine or treating human ailments."

Then follows certain exceptions among which are spiritual means, but the exceptions do not include chiropractic. Furthermore, this court in *Board of Medical Examiners* v. *Freenor*, 47 Utah 430, 154 P. 941, Ann. Cas. 1917E, 1156, and in *State* v. *Erickson*, 47 Utah, 452, 154 P. 948, held that chiropractic is the practice of medicine.

Counsel for the commission takes the position that, since chiropractors were not licensed to practice in 1917 when the Workmen's Compensation Act was written, chiropractic could not have been included within the term "medical service" as used by the Legislature in that act. But the Legislature had in mind when it used the term, "medical services," such services as are rendered by one licensed to practice medicine within the state. And it must have had in mind the Freenor and Erickson Cases, supra, decided a year previous, holding that the chiropractor was practicing medicine.

Be it noted that the law in 1917 did not forbid nor prohibit chiropractic, but merely required the chiropractor to take his medical examination and obtain his license to practice medicine. The statute today recognizes the chiropractor as one practicing medicine, but provides that he may be licensed to practice it within a limited field, upon taking an examination covering that field, or the chiropractor may be licensed to practice in all branches of medicine and surgery, upon taking the examination covering the whole field. The chiropractor is like the obstetrician, who, taking a limited examination, may practice in the limited field but still renders medical services.

Though the chiropractor does not use medicines or perform surgical operations, he does treat and operate on patients for physical ailments, and but for his certificate from the Department of Registration would be liable to the penalty prescribed for practicing medicine without a license. The term "medicine" is not limited to substances supposed to possess curative or remedial properties, but has also the meaning of the healing art—the science of preserving health and treating disease for the purpose of cure—whether such treatment involves the use of medical substances or not. The injury to the plaintiff was a wrench or injury to the lower cervical and upper dorsal regions of the spine, received in heavy lifting, and the services rendered by the chiropractor were within the special field of medicine in which he was licensed to practice.

The Supreme Court of California construing a statute similar to ours, which provided, inter alia, that the injured workman should be paid for "(a) Such medical, surgical and hospital treatment, including nursing, medicines, medical and surgical supplies   *   *   *   as may reasonably be required," St. 1915, p. 1082, § 15(a), has this to say:

"The primary purpose of industrial compensation is to insure to the injured employee and those dependent upon him adequate means of subsistence while he is unable to work, and also to bring about his recovery as soon as possible in order that he may be returned to the

ranks of productive labor. By this means society as a whole is relieved of the burden of caring for the injured workman and his family, and the burden is placed upon the industry. That the injured workman and his dependents may be cared for, compensation in the form of disability benefits is provided for by the act approximating the wages earned by the employee, and varying with the degree of disability and dependency. And, to secure the speedy return of the workman to productive employment, it is provided that medical and surgical services shall be furnished by the employer. This liability for medical and surgical services is not, therefore, a burden placed upon the employer as a penalty for any failure of duty on his part, but is merely a part of the whole compensation due the employee as the result of his injury. It therefore follows that the medical and surgical services contemplated and called for by the statute in question should be such as will tend to secure the return of the workman to productive employment. In other words, and perhaps more precisely stated, the treatment required by the statute is such as will reasonably and seasonably tend to relieve and cure the injured employee from the effects of the injury." *Union Iron Works* v. *Industrial Acc. Com.*, 190 Cal. 33, 210 P. 410, 413.

The services rendered by the chiropractor were rendered to relieve the condition of the plaintiff's back, resulting from the injury, to restore him to health, and to remunerative employment. They were such as a physician or an osteopath might, under some circumstances, have rendered. They were services which fall within the definition of "practice of medicine" as given in the statute, were therefore medical services, were rendered by one licensed to practice within that field, and should therefore have been allowed by the commission.

The order of the Industrial Commission refusing and denying plaintiff's claim is vacated and set aside, and the cause remanded to the Industrial Commission for further proceedings. Each party to bear their own costs.

FOLLAND, C. J., and HANSON, MOFFAT, and WOLFE, JJ., concur.