Clayton I. NEAGLE, Appellant,

v.

STATE HIGHWAY DEPARTMENT, Commonwealth of Kentucky et al., Appellees.

Court of Appeals of Kentucky.

Oct. 11, 1963.

Robert C. Carter, Glasgow, for appellant.

Bell, Orr & Reynolds, Bowling Green, for appellees.

MOREMEN, Judge.

Appellant, Neagle, injured his back in May 1958 while working for the Department of Highways. He was covered by the Workmen's Compensation Act. About a year later he filed with the board an application for adjustment of his claim and stated that he was permanently totally disabled by reason of the accident. Appellee, State Department of Highways, conceded that he was totally disabled from pursuing his occupation as a laborer from May 1958 until October 1958, and admitted that there is some partial permanent disability. The parties, however, disagreed as to the percentage of disability. Appellee fixed this figure at fifteen per cent while appellant claimed that his disability should be eighty per cent. This issue was the one to which the testimony taken before the board was directed.

At the time he filed his report the referee was of opinion that appellant's disability would range from sixty-five per cent for a period of fifty-two weeks which should later be reduced to forty-five per cent for a similar period. Upon full board review it was determined that appellant suffered a permanent partial disability of fifteen per cent and upon appeal the award was affirmed by the Barren Circuit Court.

We are confronted with the question of whether the board had sufficient evidence of probative value upon which to base its award.

Appellant testified that at the time of his injury he was burning brush and when he was moving down an embankment to obtain some brush from a pile, he lost his balance and twisted his back. He continued to work that day and went back the next day; evidently he then missed a few days, but tried again. On the 22nd day of May he ceased work and has been unable to work since that time. On the same day he visited Dr. Lewis Dickinson who prescribed rest for him and use of a fracture board in his bed. When he did not respond entirely to this treatment, Dr. Dickinson sent him to Dr. Thomas Marshall of Louisville, a

neurosurgeon, who in turn called in for consultation the firm of Drs. Costigan, Riley and Coy, orthopedists. Appellant was taken to St. Joseph's Infirmary where he stayed until about August 24th. He returned on September 28 and stayed until October 4, during which period Dr. Marshall did a myelogram. He found no neurological changes and the myelogram was entirely negative. Later, on December 20, 1958, appellant went to Dr. Durston, a chiropractor in Bowling Green, who thereafter treated him. On September 16, 1959, at the request of appellee, Neagle was examined by Dr. Carson, an orthopedic surgeon.

As indicated above, the referee based his opinion and award in a great measure upon the testimony of Dr. Durston, a chiropractor, who had treated Neagle over a hundred times before the claim came on to be heard. However, upon full board review, the board elected to base its award upon the amount of disability fixed by the other doctors, whose evaluations of disability ranged from zero in Dr. Carson's opinion to fifteen per cent as assessed by Dr. Marshall.

The board said:

"On September 16, 1959, Dr. Wm. O. Carson examined the plaintiff and found no evidence of any hernia of the vertebral discs or pressure on any nerve roots.

"Dr. Durston, a chiropractor, examined the plaintiff December 20, 1958. Dr. Durston fixed the plaintiff's disability at 80 per cent to the body as a whole.

"With no disrespect or criticism, we cannot give the same weight to Dr. Durston's testimony as that of Drs. Dickinson, Marshall and Carson.

"Dr. Dickinson's testimony as to compensation neurosis was not developed; consequently we cannot (sic) give such a diagnosis but little consideration."

Appellant argues that because of the above finding the board rejected competent evidence on a comparative basis with medical doctors' evidence, and that the circuit court on appeal erroneously failed to require the board to consider such evidence. We have many appeals where the testimony of doctors produced by the employers and employees is diametrically opposed concerning the extent of the injury, but on appeal the only concern of the court is limited to whether there was competent evidence of probative value to support the factual findings of the board. In Mengel Co. v. Lehman, Ky., 259 S.W.2d 19, it was said:

"It will thus be seen that the testimony, medical and lay, introduced by the claimant is in direct conflict with that produced by the company. Ours is not the task to evaluate the evidence. We have many times written that the sole function of a court, so far as questions of fact are concerned in a compensation case, is to ascertain whether or not the record contains any competent evidence of probative value to support such factual findings of the Board, and that neither the circuit court, nor this one, is authorized to determine the weight to be given to the evidence."

The next question is whether or not the board was correct in declining to allow the chiropractor's fee to be treated as a medical expense. This involves a determination of whether chiropractic services are within the term, "medical, surgical and hospital treatment," as used in the Workmen's Compensation Act. KRS 342.020 (1) provides that the employer shall furnish such "medical, surgical and hospital treatment" as reasonably may be required.

The courts of some jurisdictions have held that the chiropractor should be compensated. The statutes of these jurisdictions, however, include chiropractic manipulation within the "practice of medicine." See Green v. Rawlings, 290 Mich. 397, 287 N.W. 557; and Shober v. Industrial Commission, 92 Utah 399, 68 P.2d 756.

In jurisdictions where chiropractic is not considered medical practice, it has been held that there can be no compensation. See Corsten v. State Industrial Commission, 207 Wis. 147, 240 N.W. 834.

In subsection (2) of KRS 312.015, chiropractic is defined as the science of locating and adjusting the subluxations of the articulations of the human spine and its adjacent tissues, but nowhere in Chapter 312 of the Kentucky Revised Statutes is the word, "medicine" or the words, "medical treatment," used. The term, "practice of medicine" in Kentucky does not include the practice of chiropractic. In fact, the definition of that phrase in subsection (8) of KRS 311.550 reads "the 'practice of medicine' does not include * * * the practice of chiropractic as defined in subsection (2) of KRS 312.015."

Under the strict definitions in the foregoing sections we are forced to hold that the term "medical treatment" as used in KRS 342.020 does not include chiropractic manipulation.

Judgment affirmed.