KENTUCKY ASSOCIATION OF CHIRO-PRACTORS, INC., Appellant,

v.

JEFFERSON COUNTY MEDICAL SOCIETY et al., Appellees.

KENTUCKY STATE BOARD OF CHIROPRACTIC EXAMINERS et al., Appellants,

v.

JEFFERSON COUNTY MEDICAL SOCIETY et al., Appellees.

Supreme Court of Kentucky.

April 1, 1977.

John C. Anggelis, Timothy C. Wills, Anggelis, Vimont & Bunch, P.S.C., Lexington, for appellant Kentucky Ass'n of Chiropractors, Inc.

Robert F. Stephens, Atty. Gen., William W. Pollard, Asst. Atty. Gen., Frankfort, Dale Burchett, Glasgow, for appellant Kentucky State Bd. of Chiropractic Examiners.

Carl L. Wedekind, Jr., Stites, McElwain & Fowler, Louisville, for appellee Jefferson Cty. Medical Soc.

John P. Godfrey, Jr., Frankfort, for appellee Com. of Kentucky, Dept. for Human Resources.

Rudy Yessin, Frankfort, for appellee Kentucky State Bd. of Medical Licensure.

William T. Warner, Wood, Goldberg, Pedley & Stansbury, Louisville, for appellees International Clinical Laboratories of Kentucky, Inc., and Malcolm L. Barnes, M.D.

CLAYTON, Justice.

This is a consolidated appeal requiring that we determine whether chiropractors are included in the phrase "other person authorized by law" of KRS 333.150 and .160 so as to authorize them to submit specimens from the human body to state-licensed medical laboratories and to use the reports thereby obtained in diagnosing human ailments. After carefully considering the issue, we are of the opinion the General Assembly has not so empowered practitioners of chiropractic, and we therefore affirm the judgment of the circuit court.

This case arises from the following factual situation and statutory authority. KRS 333.240(3) prohibits state-licensed medical laboratories from accepting specimens submitted by and making reports to "persons who are not legally qualified or authorized to submit specimens to medical laboratories and to receive such reports." KRS 333.160 enumerates those persons authorized to manipulate a patient for the collection of specimens as including "only a licensed physician, dentist or other person authorized by law," and KRS 333.150 designates that "a medical laboratory shall examine human specimens only at the request of a licensed physician, podiatrist, dentist or other person authorized by law to use the findings of medical laboratory examinations . . ." At the commencement of this action, "chiropractic" was defined by KRS 312.015(2) as ". . . the science of locating and adjusting the subluxations of the articulations of the human spine and its adjacent tissues; . . . ." This section was amended, effective June 19, 1976, to now read ". . . 'Chiropractic' means the science of diagnosing and adjusting the subluxations of the articulations of the human spine and its adjacent tissues; . . ." and a statutory definition of "chiropractor" was added by a new subsection—". . . 'chiropractor' means one qualified by experience and training . . . to diagnose his patients and to treat those of his patients diagnosed

as having diseases or disorders relating to subluxations of the articulations of the human spine and its adjacent tissues by indicated adjustment of those subluxations and by applying methods of treatment designed to augment those adjustments . . . ."

International Clinical Laboratories of Kentucky, Inc., a medical laboratory licensed under the provisions of KRS Chapter 333, performed tests upon blood and urine specimens submitted to it by the Kentuckiana Center for Education, Health and Research, Inc., a nonprofit clinic and school for retarded children employing the services of chiropractors licensed under the provisions of KRS Chapter 312 and regulated by appellant Kentucky State Board of Chiropractic Examiners. The results of those tests were reported back to the chiropractors who used them for diagnostic purposes in providing chiropractic services to the children attending the school. When the Jefferson County Medical Society called these actions into question, International Clinical Laboratories and its director, Malcolm L. Barnes, M.D., petitioned for a declaration of rights in the Jefferson Circuit Court as to whether the chiropractors could take and submit such specimens to it and whether it was permitted to evaluate such specimens and report its findings back to the chiropractors for diagnostic purposes. Named as defendants in the action were all parties in interest, including the Jefferson County Medical Society; Kentuckiana Center for Education, Health and Research, Inc.; Commonwealth of Kentucky, Department for Human Resources; Commonwealth of Kentucky, State Board of Medical Licensure; and the Kentucky State Board of Chiropractic Examiners. The circuit court permitted the intervention of the Kentucky Association of Chiropractors, Inc., as a respondent-intervenor, and granted the request of the Kentucky Chiropractic Society to file an amicus curiae brief. Having determined that an actual controversy exists between the parties which is suitable for a declaratory judgment and that no issue as to any material fact exists, the court considered the motions of both sides for summary judgments, ruling in favor of

the position that chiropractors are not permitted under Kentucky law to utilize the services of state-licensed medical laboratories in diagnosing human ailments, and holding that prohibiting chiropractors from so using such laboratories is not a denial of due process of law or of equal protection of the laws. These appeals, brought by the Kentucky Association of Chiropractors, Inc., and the Kentucky State Board of Chiropractic Examiners, result from that ruling.

In separate briefs, appellants argue that chiropractors are expressly and impliedly authorized to use medical laboratories for diagnostic purposes. Express authorization, they argue, has been given by a regulation duly promulgated by the Kentucky State Board of Chiropractic Examiners during the pendency of this action before the circuit court, and subsequently declared void by that court, as being inconsistent with the provisions of KRS Sections 312.015 to 312.-185, the statutes governing the practice of chiropractic. Implied authorization is argued to come from the statutory definition of "chiropractic" as it read prior to amendment in 1976 which, it is contended, confined the scope of a chiropractor's permissible treatment but did not limit his realm of diagnostic procedures. It is further claimed in connection with this section that following its amendment, Kentucky chiropractors now have specific statutory authorization to perform the activities in question here, so that the case is now moot. Finally, reliance is placed on KRS 312.190, which authorizes chiropractors to sign death certificates and other unspecified legal documents ". . . with the same authority as members of other schools or systems of treatment," as providing a broad inference that this would also permit the result sought here, the reasoning being that since the use of laboratory findings is necessary in many instances to diagnose the cause of death, in enacting this section the legislature was evidencing its intent that chiropractors be permitted to use these findings and that they be considered an "other person authorized by law" within the meaning of KRS 333.150 and .160. The regulation relied upon as

express authorization, 201 KAR 21:020, Section 3, provides as follows:

"Chiropractors may examine, analyze and diagnose the patient and his diseases by the use of any physical, chemical, or thermal method reasonably appropriate to the case. Chiropractors qualified by training and skill for diagnosis and analysis of patients by use of radiographs, blood analyses or other methods of examination may utilize the services of persons authorized by law to perform the procedures involved in such methods of examination. Provided, however, that the board may upon notice and hearing find any licensee unfit to use specified methods of examination, and provided further that the board by duly promulgated regulation may prohibit or restrict use of specified methods of examination which the board determines are appropriately so regulated." (1 Ky.R. 1254; eff. 7–2–75.)

■■■ While appellants are correct in their assertion that administrative regulations which have been duly adopted and properly filed have the full effect of law, nonetheless the power of the agency to adopt such regulations is limited to a direct implementation of administration of the functions and duties assigned to the administrative body by statute or executive order. KRS 13.082(1). As we read the regulation in issue here, we see it as an attempt to grant to chiropractors authority which had been previously withheld. It therefore goes well beyond the powers granted to the Board of Chiropractic Examiners by KRS 312.075, and the statutory definition of Chiropractic as originally written and as amended. As such, it is legislative in nature and in violation of Sections 27 and 28 of the Kentucky Constitution. In *Henry v. Parrish*, 307 Ky. 559, 211 S.W.2d 418 (1948), we recognized that the power to make regulations is not the power to legislate in the true sense, and the statute which is being administered may not be altered by the exercise of a power to make regulations thereunder. Regulations are valid only as subordinate rules and when found to be within the framework of the policy defined by the legislature. We therefore can find

no error in the circuit court's declaring this regulation void.

■■■ We also cannot sustain appellants' argument of implied authorization. In determining the intent of the General Assembly in enacting legislation, the primary rule is to ascertain the intention from the words employed in enacting the statute, rather than surmising what may have been intended but was not expressed. *Gateway Construction Company v. Wallbaum*, Ky., 356 S.W.2d 247, 249 (1962). As correctly pointed out by the circuit court in its opinion, the language of the original statutory definition of "chiropractic" gives absolutely no authorization for the collection and submission of human specimens to a medical laboratory, but merely authorizes the location and adjustment of partial dislocations of joints of the spine and its adjacent tissues. We thus can find no evidence from the definition as originally worded of any intent by the General Assembly to authorize any activity by chiropractors involving medical laboratories. Neither do we believe that the amendment of KRS 312.015 by the substitution of "diagnosing" for "locating" and the addition of the new subsection (3) defining "chiropractor" now provides such authorization, for again, the wording of the statute does not provide even an inference that such authorization was intended. To the contrary, by the addition of a subsection (4) enumerating the fields of medicine within which the practice of chiropractic is not to be included, the inference results that the General Assembly intended to make no fundamental change in the practice of chiropractic by these amendments.

Appellants' reliance on the statute permitting chiropractors to sign death certificates and other legal documents is similarly ill-placed. An examination of the relevant statutes shows that while KRS 312.190 permits chiropractors to sign death certificates and KRS 213.080 requires the death certificates contain the cause of death, neither of these statutes authorizes the removal of specimens from the human body for submission to laboratories. Where it is contem-

plated that circumstances surrounding death might require examination utilizing the facilities of a medical laboratory, KRS 72.070 and .080 specifically limit such examinations to be made by a surgeon, physician or chemist. We therefore conclude the authority to sign a death certificate and to state the cause of death does not carry with it the authority sought to be recognized here.

■■■ Appellants' final contention is that prohibiting chiropractors from employing the services of medical laboratories in the manner envisioned constitutes a violation of substantive due process of law and of equal protection of the laws, contrary to the Fourteenth Amendment to the United States Constitution. We disagree. The Fourteenth Amendment permits states wide discretion in enacting laws which affect some group of citizens differently from others, the due process or equal protection safeguards contained therein being offended only if the resultant classifications or deprivations of liberty rest on grounds wholly irrelevant to a reasonable state objective. *McGowan v. State of Maryland*, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Therefore, unless a statutory classification is arbitrary, or not founded on any substantial distinction suggesting the necessity or propriety of such legislation, the courts have no right to interfere with the exercise of legislative discretion. In the instant case, we are of the opinion the classification of chiropractors as a distinct class of persons who may not collect and submit specimens from the human body to a medical laboratory for purposes of diagnosis does not violate the Fourteenth Amendment guaranteeing equal protection of the laws, nor does it amount to a violation of life, liberty or property without due process of law. This view is based on our recognition that it is clearly within the province of the General Assembly to determine that, to protect the public health and general welfare, only those persons admitted to the practice of medicine[1] should be authorized to perform the activities in question here.

The judgment is affirmed.

All concur except JONES and LUKOWSKY, JJ., who dissent.

JONES, Justice, dissenting.

In my view, common sense and public policy considerations apply to the statutory enactments in this case. Because "common sense" and "public policy" considerations are foreign to the view as expressed by the majority, I dissent.

Aside from the literal language of the statutes (set out in the majority opinion) which I believe are sufficient to authorize chiropractors to use medical laboratories, there are other considerations to be applied in determining the legislative intent of KRS Ch. 333. Particularly is this so as it related to the question of whether chiropractors are *"other persons"* authorized to use medical laboratories. While the wording of an act as passed by the legislature is of major importance, the application of common sense is not to be excluded. *Kentucky Region Eight v. Commonwealth of Kentucky*, Ky., 507 S.W.2d 489 (1974).

On the question of who is an "other person authorized by law," the majority view is eloquent by its silence. The majority opinion simply holds that, only a licensed physician, [podiatrist, or a dentist] shall manipulate a patient for the collection of specimens. . . . The majority of my colleagues either ignore the phrase, *"or other person authorized by law"* (emphasis added), or treat it as surplusage. They in effect give the chiropractors of this Commonwealth a bone stripped of meat.

Statutory law is an expression of the will of the General Assembly. When a court is faced with interpreting a statute, as is the case here, it must determine what the legislature intended by enacting the statute, as well as the purpose behind it. Where the language of the statute is clear and unambiguous and expresses the intent of the

---

1. Which in Kentucky clearly does not include practitioners of chiropractic, KRS 312.015(4); *Neagle v. State Highway Department*, Ky., 371 S.W.2d 630 (1963).

legislature, then the statute must be interpreted by the court as written. *Griffin v. City of Bowling Green,* Ky., 458 S.W.2d 456 (1970).

In light of these legal principles it is apparent that the phrase *"other person authorized by law"* would not have been included in the statute if the legislature had not intended for someone other than a doctor, dentist, or podiatrist to use the facilities of a medical laboratory. The phrase in plain, concise, everyday meaning, is that persons in addition to those mentioned may use laboratory findings.

I am of the opinion that as a matter of public policy, chiropractors should be permitted to make a diagnosis as to the best of their professional skill. Their patients are entitled to the best treatment chiropractors are able to give, and this includes diagnosis in order to determine whether the patient is susceptible to chiropractic treatment or if it would be harmful to him. An opportunity should be given the chiropractor to weed out those patients who would not benefit from his treatment or might be harmed by his treatment. If the diagnosis indicates that a patient might be harmed by chiropractic treatment, the chiropractor should be permitted to refer him to the proper branch of the healing arts. I believe the following example would indicate the problem: Patient A may consult his chiropractor complaining of a pain in his lower back. The pain could be caused by subluxation, a condition which only a chiropractor is statutorily authorized to treat by adjustment. On the other hand, Patient A's complaint could be a pain caused by an organic disorder. His complaint might be as consistent with a kidney disorder as it is with a subluxation. A simple diagnostic test of A's urine to determine the presence or absence of blood or pus will aid the chiropractor. If the latter condition were present, that would indicate to the chiropractor that there is no subluxation. Patient A could then be referred to a physician.

The chiropractic profession has been recognized in this Commonwealth for nearly fifty years. At its 1928 session the General Assembly passed an act to create a Board of Chiropractic Examiners, to regulate the practice of chiropractic, to provide penalties for violation of the act, and to prohibit the practices of any other mode or system under the name of chiropractic. Ky. Acts, 1928, Ch. 123, pp. 416–421. That act was approved on March 8, 1928. It is interesting to note that the most significant change in the statutes dealing with chiropractors came about in 1976. For nearly half a century the definition of chiropractic remained the same. The 1928 act, Sec. 5, defines chiropractic as follows:

"Chiropractic is defined as the science of locating and adjusting the subluxations of the articulations of the human spine and its adjacent tissues."

In the act of 1976, House Bill 758, approved March 30, 1976, (KRS 312.015(2)) chiropractic is defined:

"Subject to the limitations of Subsection 4 of this section, 'chiropractic' means the science of *diagnosing* and adjusting the subluxations of the articulations of the human spine and its *adjacent tissues* . . . ." (Emphasis added).

It is obvious that the majority view equates "locate" with "diagnose" or "diagnosis." Ah, there's the rub that finds me at variance with my colleagues' interpretation. Locate is defined in Webster's Third International Dictionary as follows:

"1. to determine or indicate the place of: define the site or limits of . . . ;

2. (a) to set or establish in a particular spot or position;

3. (a) to seek out and discover the position of . . . ;

3. (c) to determine the position of."

Diagnose is defined by *Webster,* supra, as:

"1. to identify (as a disease or condition) by symptoms or distinguishing characteristics;

2. to determine the causes of or the nature of by diagnosis."

Diagnosis is defined as:

"1. the art or act of identifying a disease from its signs and its symptoms . . . ;

2. an investigation or analysis of the nature or cause of the condition, stipulation or problem."

While this matter was pending in the circuit court, the Kentucky State Board of Chiropractic Examiners promulgated an administrative regulation authorizing doctors of chiropractic to use the findings of a medical laboratory examination. The regulation provides:

"Chiropractors may examine, analyze and diagnose the patient and his diseases by the use of any physical, chemical, or thermal method reasonably appropriate to the case. Chiropractors qualified by training and skill for diagnosis and analysis of patients by use of radiographs, blood analysis or other methods or examination may utilize the services of persons authorized by law to perform the procedures involved in such methods of examination. Provided, however, that the Board may upon notice and hearing find any licensee unfit to use specified methods of examination, and provided further that the board by duly promulgated regulations may prohibit or restrict use of specified methods of examination which the board determines are appropriately so regulated." K.A.R. 21:020, § 3.

Thereafter Jefferson County Medical Society, Bureau of Health Services, and the Kentucky State Board of Medical Licensure filed their motion and supporting brief for summary judgment. Subsequently, in reading a brief filed by the Kentuckiana Center for Education, they learned of the existence of the regulation. Then they filed with the trial court an amended cross claim requesting the trial court to declare the regulation void. The Kentucky Association of Chiropractors, Inc., filed a motion to amend the judgment as it pertained to the regulation. It also requested the court to include a finding as to what portions of the regulation are inconsistent with the statutes governing the practice of chiropractic. On January 27, 1976, in its amended judgment, the trial court refused to amend the original judgment.

It is the general rule in Kentucky that administrative regulations properly filed and adopted have the same effect as statutes directly enacted by the General Assembly from which the administrative agency is delegated its authority. *Rietze v. Williams,* Ky., 458 S.W.2d 613 (1970). The regulations adopted by any state agency must be confined to the function that the agency is authorized to administer.

Former KRS 312.075 repealed by the legislature in 1976 is now KRS 312.019. Subsection 9 grants the board rule-making power relative to governing the practice of chiropractic as long as the rules promulgated by the board are not inconsistent with the provisions of the statutes.

This regulation was submitted to the Legislative Research Commission for review in accordance with KRS 13.085 on May 15, 1975. The Administrative Regulation Review Subcommittee approved the regulation on July 3, 1975, thereby affirming the Legislative Research Commission's finding that the regulation conformed to the statutory authority under which it was promulgated.

Chiropractic is not a cult. The evidence reveals that there are ten outstanding colleges of chiropractic in the United States. Each of these offer courses in diagnostic procedures. Each applicant who desires to be a licensed chiropractor "shall have satisfactorily completed not less than sixty (60) semester credit hours of study from a college or university accredited by the Southern Association of Colleges and Universities or an accrediting agency recognized by the Southern Association of Colleges and Universities or any successor to the powers of either and is a graduate of a chiropractic college accredited by the Association of Chiropractic Colleges, or the council on chiropractic education or their successors, and which maintains a standard of reputability approved by the board." KRS 312.085.

Each applicant for a license to practice chiropractic is required to take an examination.

"(2) The examination shall consist of a written test including questions of essay

or objective type designed to measure the applicants' knowledge of the subjects of anatomy, physiology, pathology, neurology, histology, hygiene, bacteriology, chemistry, chiropractic orthopedics, diagnosis, the use and effects of x-ray and chiropractic principles and practices as taught in chiropractic schools and colleges. A portion of said examination shall consist of a practical demonstration of clinical competency to be evaluated by the board by such methods as it may designate prior to the examination." (Enact. Acts 1962, ch. 179, § 11; 1976, ch. 359, § 12.) KRS 312.115(2).

The critical shortage of health care delivery personnel in this Commonwealth would seem to mandate the complete and full utilization of all of those persons reasonably equipped by training and experience. The purpose behind KRS Ch. 333 is to protect the health and welfare of the people in Kentucky by requiring medical laboratories to provide reliable and competent information to health professionals. KRS 333.010. The interests of the public health and safety of the citizens of this Commonwealth require that chiropractors be given the right to use those diagnostic tools which they are reasonably equipped to perform through training and experience.

In my view, to deny chiropractors the use of clinical laboratories for the analysis of the blood or urine of their patients would be a disservice to the patients by not assuring them of the best professional diagnosis available to the chiropractor, and would contradict the obvious legislative intent of the General Assembly.

The majority opinion seems to relegate the profession of chiropractic to the mere manipulation of the spine. Such a position is archaic, intellectually naive, and without scientific merit.

For the foregoing reasons, I dissent.

I am authorized to say that LUKOWSKY, J., joins in this dissent.