526 So.2d 554 (1988)
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.
v.
Dorothy L. GREGG.
No. 57656.
Supreme Court of Mississippi.
June 3, 1988.
Jack F. Dunbar, John H. Dunbar, Holcomb, Dunbar, Connell, Chaffin & Willard, Oxford, for appellant.
Preston Davis Rideout, Jr., Fraiser, Burgoon & Abraham, Greenwood, Lon Stallings, Calhoun City, for appellee.
Before DAN M. LEE, ROBERTSON and ZUCCARO, JJ.
DAN M. LEE, Presiding Justice, for the court:
This case presents the question whether chiropractic expenses are included within the coverage of an insurance policy "med pay" provision.
Dorothy L. Gregg received a judgment against appellee State Farm Mutual Automobile Insurance Co. (State Farm) in the amount of $780 on the basis of the trial court's affirmative answer to the question posed above.
The facts are virtually without dispute, and the trial court decided liability based on interpretation of Mrs. Gregg's "med pay" policy provision and our statutory "freedom *555 of choice" provision, Miss. Code Ann. § 83-41-215 (Supp. 1987) (effective from and after April 24, 1980).
State Farm appeals, assigning as its lone error that the trial court erred in granting summary judgment on behalf of Mrs. Gregg.

FACTS
Based on stipulations, the facts are these:
Dorothy Gregg injured her back in an automobile collision on April 27, 1985. At the time of the collision, Mrs. Gregg was driving her four-door Mercury Marquis, for which State Farm provided liability insurance. This policy included coverage for medical payments of up to $5,000 per injured person.
Following the accident, Mrs. Gregg received chiropractic care from M. Ray Teas, a licensed chiropractor who practices in Calhoun City, Mississippi. These treatments began April 29, 1985 and continued through September 27, 1985. Admittedly, the treatments and services rendered by Teas were within the scope of lawful chiropractic practice as defined in Miss. Code Ann. § 73-6-1 (1972).
Teas had no right to practice medicine or surgery, nor did he have the right as a physician or to prescribe drugs or to advise patients not to use a prescribed drug, but he could make x-rays.
Mrs. Gregg's total bill for chiropractic services came to $920, $140 of which covered the cost of x-rays. Mrs. Gregg properly submitted a claim to State Farm which it denied based on the fact that it considered chiropractic treatment other than the x-rays not to be medical expenses covered by the policy "med pay" provision. Mrs. Gregg filed suit for $920.00 and State Farm State Farm tendered $140 to cover the x-rays. The parties agreed that if covered, the $920 represented a reasonable and necessary charge.
The "med pay" provision stated as follows:
We will pay reasonable medical expenses for bodily injuries caused by accident, for services furnished within one year of the date of the accident. The expenses are for necessary medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, and funeral services, eyeglasses, hearing aids, and prosthetic devices. (R. 20) (Emphasis added).
The trial court found no material factual dispute, and granted summary judgment in favor of Mrs. Gregg in the amount of $780. From that judgment State Farm brings this appeal.

I.

Did the Trial Court Err in Holding that State Farm Must Reimburse for Lawful Chiropractic Services?
In holding that State Farm's policy provided coverage for Mrs. Gregg's expense, the trial court read into the policy what it considered as a coverage mandate which it purportedly found in Miss. Code Ann. § 83-41-215 (Supp. 1987). That section provides:
Whenever any policy of insurance or any medical service plan or hospital service contract or hospital and medical service contract issued in this state provides for reimbursement for any service which is within the lawful scope of practice of a duly licensed chiropractor as defined in section 73-6-1, Mississippi Code of 1972, then such service may be performed by a duly licensed chiropractor, and the insured or other person entitled to benefits under such policy, plan or contract shall be entitled to reimbursement for such services. The insured shall have the right to choose the place where the service is to be performed as well as the chiropractor to perform such service, provided that such service shall be performed in the chiropractor's office, clinic or regular place of business.
The trial court held "State Farm should be required to reimburse the Plaintiff and others similarly situated for the treatment of any injury or condition by a chiropractor so long as the treatment is within the lawful scope of the practice of chiropractic."
*556 In so holding, the trial court rejected State Farm's argument that § 83-41-215 applied only "whenever" the policy "provides for reimbursement." To the extent the trial court considered section 83-41-215 to mandate coverage we think he was incorrect. The statute's plain purpose is to assure that "whenever" the policy provides coverage for chiropractic services the insured or the policy beneficiary may obtain services from the chiropractor of his or her choice.
Whether a particular policy binds the insurance company to reimburse its insured for chiropractic services is a product of the policy language, not a matter of statutory law. In addition, where the Legislature intended that payment for certain overlapping services be reimbursable regardless of whether the services were performed by a physician or by some other health care professional, it expressed this intent much more plainly than it did with this statute. See Miss. Code Ann. § 83-41-209 (Supp. 1987) (beneficiaries' freedom of choice of practitioner in performance of dental services); Miss. Code Ann. § 83-41-211 (Supp. 1987) (beneficiaries' freedom of choice of practitioners in treatment of mental or nervous disorder  psychologist). Thus, Miss. Code Ann. § 83-41-215 (Supp. 1987) does not prohibit an insurance company from drafting its medical payment clause to exclude coverage for chiropractic care, to include coverage for all chiropractic care, or to limit its coverage to only some chiropractic services. Of course, any insurance company binding itself to cover chiropractic services brings itself under the dictates of this section's mandatory freedom of choice provision.
Whether under the terms of this particular insurance policy provision State Farm agreed to cover Mrs. Gregg's "reasonable medical expenses for bodily injuries caused by accident, for services furnished within one year," which medical services happened to be rendered by a chiropractor, is the question we must decide. It is significant that the injury was to the back or vertebral column where chiropractors are authorized to treat, and not to the eye or some other part of the body.

II.

Did the "Med Pay" Provision Cover Chiropractic Services?
As noted, the trial court found the "med pay" provision to be clear and unambiguous. State Farm is correct that where unambiguous, an insurance contract is not construed in favor of the insured, but rather is construed as written. Ford v. Lamar Life Ins. Co., 513 So.2d 880, 886 (Miss. 1987); State Farm v. Scitzs, 394 So.2d 1371 (Miss. 1981); Insurance Co. of North American v. Deposit Guaranty National Bank, 258 So.2d 798 (Miss. 1972); Key Life Ins. Co. of South Carolina v. Tharp, 253 Miss. 774, 179 So.2d 555 (1965). Since under its policy State Farm agreed to cover "medical expenses," and there is really no dispute that Mrs. Gregg's treatment generated an "expense," the present problem concerns whether that expense is within the construction of the term "medical."
State Farm argues that the plain meaning of "medical" excludes chiropractors. There is, of course, support for the proposition that "medical" pertains to or relates to physicians or the science or practice or study of medicine. See Lowman v. Kuecker, 246 Iowa 1227, 71 N.W.2d 586 (1955); Mashak v. Poelker, 356 S.W.2d 713, 720 (Mo. Ct. App. 1962).
There are opinions to the contrary, however, although admittedly many courts reaching the opposite result did so interpreting broad legislative enactments. See Williams v. Capital Life & Health Ins. Co., 209 S.C. 512, 41 S.E.2d 208 (1947) (naturopathy and other healing arts have been so far recognized by the legislature that any one engaged in the practice "stands for all purposes in the position of a physician in the orthodox fields of medicine", at least within specialty); Miller v. Johnson, 496 Pa. 290, 436 A.2d 1187 (1981) (chiropractic services included within "medical services" where legislative act reflected intent to include "not only direct but also supplemental support services."); Green v. Rawlings, 290 Mich. 397, 287 *557 N.W. 557 (1939) (chiropractor engages in "practice of medicine" for workmen's compensation statute allowing for remuneration for services); Shober v. Industrial Commission, 92 Utah 399, 68 P.2d 756 (1937) (practice of chiropractic is the "practice of medicine" and expenses should have been allowed in workmen's compensation case); Arizona Public Service Co. v. Industrial Commission, 27 Ariz. App. 369, 555 P.2d 126 (1976) (since a chiropractor may testify as "medical" expert, then we cannot perceive rational basis for not considering a chiropractor as rendering "medical" services within meaning of workmen's compensation law).
One court's interpretation of the legal consequences attaching to use of the term "medical" should not restrict us, however, since in construing this term as written we are also concerned with giving to it a meaning reasonable to the average person who purchased this particular policy.
The Oxford English Dictionary (4th ed. 1978) defines the word "medical," used as an adjective, thusly:
Pertaining or related to the healing art or its professors. Also, in a narrower sense, pertaining or related to `medicine' as distinguished from surgery, obstetrics, etc.
Black's Law Dictionary (5th ed. 1979) defines "medical" as:
Pertaining, relating, or belonging to the study and practice of medicine, or the science and art of the investigation, prevention, cure, and alleviation of disease.
Even State Farm agrees that chiropractors, while they do not practice medicine, consider all health care (and, therefore, treatment of disease) to center around the correct alignment of the spine. The definition of the "practice of chiropractic" found in Miss. Code Ann. § 73-6-1 (Supp. 1987) states:
The practice of chiropractic involves the analysis of any interference with normal nerve transmission and expression, and the procedure preparatory to and complementary to the correction thereof, by an adjustment of the articulations of the vertebral column and its immediate articulations for the restoration and maintenance of health without the use of drugs or surgery.
Thus, by definition, the practice of chiropractic is the practice of healing without drugs or surgery by "adjustment of the articulations of the vertebral column."
While we have not expressly dealt with this issue, in Mississippi Farm Bureau Mutual Insurance Co. v. Garrett, 487 So.2d 1320 (Miss. 1986), we addressed a similar issue. In Garrett we held that a chiropractor was not barred from rendering an expert opinion within his area of expertise simply because the chiropractor was not a physician. We did not, contrary to Mrs. Gregg's argument, hold in Garrett that chiropractors practice medicine in a limited sense. We have held to the contrary on several occasions, and we decline to follow the Arizona Court of Appeals' lead in Arizona Public Service Co. v. Industrial Commission, supra. Garrett simply held that chiropractors could give expert opinions the same as would qualified witnesses in any other recognized discipline. What is important to our discussion, however, is the recognition in Garrett that though a chiropractor does not practice medicine, he provides health care which, in some sense, overlaps the care that could be provided by a physician. This distinction provides the answer to our present dispute.
Appellant State Farm goes to great lengths to assure us that chiropractors do not practice medicine and indeed have a totally different concept for curing illness. This may be true, but the medical payment provision of Mrs. Gregg's policy does not sufficiently distinguish between care involving the practice of medicine and care involving services of a chiropractor.
Included within the definitions of "medical" mentioned above would seem to be the practice of medicine and other healing disciplines dealing with the investigation, prevention, cure and alleviation of disease.
While a chiropractor does not and indeed cannot practice medicine, and, therefore, may not provide "medical" care in the narrowest sense, a chiropractor in the *558 broadest sense does provide what generally can be considered "medical" care by attempting to cure or prevent disease through proper alignment of the spine. The point may be made differently. A paramedic is not licensed to practice medicine. Paramedic services are not specifically enumerated as covered expenses in Mrs. Gregg's policy. Few could argue, however, that the healing services rendered by a paramedic at the scene of an accident are not in some broad sense "medical" services. In addition, ascribing a narrow meaning to the word "medical" just does not agree with the language of this provision.
The provision covers "medical expenses" for accidental bodily injury. The second sentence in the provision states:
The expenses are for necessary medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, and funeral services, eyeglasses, hearing aids, and prosthetic devises.
Thus, by its own terms, as used in the first sentence of the provision, "medical" includes services or health care in addition to services provided by a physician or at a physician's direction.
Since State Farm uses the phrase "medical expenses" to cover expenses related to services from health care providers other than just physicians, a more expansive definition of "medical" should apply, as well, and we hold that under this "med pay" insurance policy provision, "medical" includes healing arts in addition to the practice of medicine.
Had State Farm wanted to confine its coverage to only those services rendered by a physician or at a physician's direction, it could have stated exactly that in its policy. The use of the term in the policy refutes this interpretation, however.
To interpret this provision as State Farm would suggest would create an ambiguity, since it would necessitate interpreting "medical" to mean something in one sentence, but something else in the very next sentence. Were we to read into the policy this ambiguity, we would not then hesitate to construe the ambiguous term against State Farm. Under either interpretation, our decision would be the same.
We hold that under the "med pay" provision in Mrs. Gregg's policy, State Farm must pay for reasonably necessary expenses for chiropractic care rendered to alleviate the effects of accidental bodily injury. The trial court's award of summary judgment in favor of Mrs. Gregg for $780 is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.