**Henry Boston HARRIS, Jr., Appellant,**

v.

**Clara STEWART, Leon Boston, Arnold Cassady, Irene Cassady, Peggy Saunders, Roy Saunders, Carrie Lee Zahn, Curtis R. Zahn, Lloyd Boston, Frances Boston, Runell Parke, James S. Parke, Marcella Love, Adrie L. Love, Linda E. Huizenga, and Cary L. Huizenga, Appellees.**

No. 96–CA–2457–MR.

Court of Appeals of Kentucky.

March 6, 1998.

Discretionary Review Denied
June 10, 1998.

Thomas W. Davis, Glasgow, for Appellant.

Herbert B. Sparks, Edmonton, for Appellee.

Before COMBS, DYCHE and MILLER, JJ.

### OPINION

COMBS, Judge.

Henry Boston Harris, Jr., appeals from a judgment of the Metcalfe Circuit Court entered July 3, 1996, that determined that he was not the heir of Henry Boston. Harris

also appeals the denial of his subsequent motion for a new trial. We affirm.

Henry Boston died intestate on May 22, 1992. Lloyd Boston, Henry Boston's nephew, was appointed administrator of the estate on August 26, 1992. On September 26, 1992, the administrator petitioned the Metcalfe District Court to authorize the sale of real property owned by Henry Boston.[1]

Thereafter, on December 3, 1992, a complaint was filed in the circuit court seeking an adjudication that Henry Boston Harris, Jr., was the sole heir and putative child of Henry Boston. Boston's heirs-at-law, including his surviving siblings and several nieces and nephews, were named defendants in the action.

Following a period of discovery, Harris filed a motion for summary judgment. The motion was ultimately denied and the matter proceeded to trial. After considering the evidence, a jury found that Harris was not the heir of Henry Boston.

On appeal, Harris raises three issues. First, he contends that the trial court erred by failing to grant his motion for summary judgment. Next, having argued that KRS 391.105 (governing the rights of a person born out of wedlock to participate in intestate succession) is unconstitutional, he maintains that the court erred in upholding that statute. Finally, Harris maintains that the trial court erred by failing to grant a new trial due to juror misconduct. We shall consider each of these allegations of error in turn.

Harris argues that the trial court erred by denying his motion for summary judgment. In support, he emphasizes that the only issue of fact submitted to the jury—whether Henry Boston Harris, Jr., was born to Henry Boston—was the subject of a specific written request for admission to which the defen-

dants filed neither a timely objection nor a response. We disagree.

A proper request for admissions is often an effective tool in pretrial practice and procedure.[2] Once a party has been served with a request for admissions, that request cannot simply be ignored with impunity. Pursuant to CR 36.01, the failure of a party to respond to such a request means that the party admits the truth of the allegations asserted. *See, Commonwealth of Ky. Dep't. of Highways v. Compton,* Ky., 387 S.W.2d 314 (1964). Furthermore, any matter admitted under the rule is held to be *conclusively established* unless the trial court permits the withdrawal or amendment of the admissions. CR 36.02. Thus, an inattentive party served with a request for admissions may run the risk of having judgment entered against him based upon the failure to respond. *See, Lewis v. Kenady,* Ky., 894 S.W.2d 619 (1995). Pursuant to the rule, however, the trial court retains wide discretion to permit a party's response to a request for admissions to be filed outside the 30 or 45–day time limit delineated by the rule.

Turning to the facts before us, we note that along with the complaint filed in December 1992, each of the defendants below was individually served with Harris's request for admissions. While in their collective answer the defendants denied that Harris was the heir of Henry Boston, no specific responses to the requests for admissions were filed— nor were objections lodged. On March 15, 1993, Harris filed his motion for summary judgment and scheduled it to be heard on March 29, 1993. In his memorandum, Harris pointed specifically to the failure of the defendants to respond to the request for admissions. Appellees' brief notes that counsel for appellant never furnished to counsel for ap-

---

**1.** On October 27, 1992, a petition to adjudicate the person or persons entitled to the real property passing by intestate succession was filed in the Metcalfe District Court on behalf of Henry Boston Harris, Jr.

**2.** CR 36.01(2) provides in part as follows:
Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer

time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney, but, unless the court shortens the time, a defendant shall not be required to serve answers or objections before the expiration of 45 days after service of the summons upon him.

pellees a copy of the requests for admissions propounded to his clients.

On March 26, 1993, the defendants filed an extensive response to the motion, arguing that the issue of whether Harris was the heir of Henry Boston had been denied in the answer and had been vigorously contested throughout discovery. The trial court summarily denied Harris's motion.

On January 16, 1996, Harris renewed his motion for summary judgment, again referring to the failure of the defendants to respond to the request for admissions.[3] On January 30, 1996, the defendants below finally filed a response to the request for admissions. And, on February 5, 1996, the trial court denied Harris's renewed motion for summary judgment.

While a response to Harris's request for admissions was long overdue, it is clear from a review of the record that the trial court permitted the defendants to file their response out of time. It was within the court's sound discretion do to so, and the resulting decision to deny the motion for summary judgment cannot be reversed on this basis. Despite the obvious tardiness of the defendants in responding to the request for admissions, we note that Harris has not argued that the delay in securing the responses resulted in any prejudice to the presentation of his case.

Next, Harris argues that the trial court erred by failing to conclude that KRS 391.105 is unconstitutional. Again, we disagree.

KRS 391.105(1) provides, in pertinent part, as follows:

> For the purpose of intestate succession, if a relationship of parent and child must be established to determine succession by, through, or from a person, a person born out of wedlock is a child of the natural

mother. That person is also a child of the natural father if:

\* \* \* \*

> (b) In determining the right of the child or its descendants to inherit from or through the father:

\* \* \* \*

> (2) There has been an adjudication of paternity after the death of the father based upon *clear and convincing proof*
> . . . .

Harris maintains that the proof requirement set out at KRS 391.105(1)(b)(2) is unconstitutional. Given the facts of this case, he contends, the Commonwealth has no "compelling state interest" sufficient to justify imposing a greater burden of proof of paternity upon an individual born out of wedlock. He argues that the statute violates the Equal Protection Clause of the Fourteenth Amendment and Section 3 of the Kentucky Constitution.

◼ At the threshold of every review of the statutes enacted by the General Assembly is a presumption of constitutional validity. "[T]he legislature has wide latitude and prerogative. With this also comes the presumption of validity." *Harris v. Commonwealth,* Ky.App., 878 S.W.2d 801, 802 (1994). The appellant's assertion that this statute violates equal protection guarantees has been addressed several times. The standard has been stated as follows:

> Our General Assembly, under the Equal Protection Clause, has great latitude to enact legislation that may appear to affect similarly situated people differently. *Clements v. Fashing,* 457 U.S. at 963, 102 S.Ct. at 2843. Legislative distinctions between persons, under traditional equal protection analysis, must bear a rational rela-

---

**3.** The appellees argued below that their timely filed answer constituted a sufficient response to Harris's request for admissions. The trial court held otherwise and ordered that the requests for admissions were to be answered separately. Without citing any authority for the proposition, the appellees continue to insist on appeal that the answer alone was an adequate response to Harris's requests.

CR 36 makes no exception to the requirement that responses or objections must be made to proper requests for admissions. Furthermore, a party's answer to a complaint serves a function completely apart from his response to a request for admissions. And, the consequences of failing to respond appropriately to the complaint and to a request for admissions are quite different. A party who fails to admit the truth of any matter as requested under CR 36, for example, risks being ordered to pay the opposing party's litigation expenses if that matter is subsequently proved at trial. CR 37.03.

tionship to a legitimate state end. *Id.*; *Chapman v. Eastern Coal Corp.*, Ky., 519 S.W.2d 390 (1975). Under this test, statutorily created classifications will be held invalid when these classifications are totally unrelated to the state's purpose in their enactment, and when there is no other conceivable purpose for their continued viability. *Clements v. Fashing, supra, Id.,* citing *McDonald v. Board of Election Comm'rs.*, 394 U.S. 802, 808–809, 89 S.Ct. 1404, 1408–1409, 22 L.Ed.2d 739 (1969); *Kentucky Association of Chiropractors, Inc. v. Jefferson County Medical Society,* Ky., 549 S.W.2d 817 (1977).

*Chapman v. Gorman,* Ky., 839 S.W.2d 232, 239–240 (1992); *see also, Commonwealth v. Wasson,* Ky., 842 S.W.2d 487 (1992).

In *Trimble v. Gordon,* 430 U.S. 762, 766, 97 S.Ct. 1459, 1463, 52 L.Ed.2d 31, 37 (1977), the Supreme Court wrote as follows:

> In weighing the constitutional sufficiency of [the justifications for the statute] we are guided by our previous decisions involving equal protection challenges to laws discriminating on the basis of illegitimacy. [Footnote omitted.] "[T]his Court requires, at a minimum, that a statutory classification bear some rational relationship to a legitimate state purpose." *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768 (1972).

As applied to inheritance statutes, the Supreme Court has recognized that the State may apply "a more demanding standard" for illegitimate children who seek to inherit from their father's estate in order to promote the efficient administration of a decedent's estate and to avoid spurious claims arising out of paternity actions. *Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978).

■ It is true that KRS 391.105(b)(2) places special burdens on those born out of wedlock. However, in view of the fact that the United States Supreme Court has recognized that there are important state interests which can justify treating legitimate and illegitimate children differently, Harris has failed to bear his burden of proof that the statute is unconstitutional. We find that the provisions of the statute bear a rational and substantial relationship to the furtherance of a legitimate state purpose.[4]

There are significant problems associated with proving paternity where, as here, the putative father is deceased. In view of these problems, KRS 391.105(b)(2) was enacted by the legislature with the aim of insuring the orderly disposition of property at death and assuring the dependability of titles to property passing through intestacy. The requirements of the statute, including the burden of establishing a posthumous claim of paternity through clear and convincing evidence, does not amount to an insurmountable barrier preventing those born out of wedlock from sharing in the father's estate. Instead, the statutory provision under attack serves to protect the integrity of decedents' estates and the citizens of the Commonwealth. The provision is substantially related to legitimate state interests and does not violate equal protection guarantees.

■ Harris also attacks KRS 391.105(b)(2) as being violative of the separation of powers doctrine emanating from Sections 27, 28, and 116 of the Kentucky Constitution. Because the statute makes reference to the burden of proof, Harris contends, the legislature's enactment runs afoul of the Kentucky Supreme Court's authority to prescribe "rules of practice and procedure for the Court of Justice." We disagree.

■ Standards of proof governing civil and criminal cases are routinely established by statute. It is within the legislature's power to enact such provisions. 16A Am.Jur.2d *Constitutional Law* § 851 (1979). We do not believe that the requirement that a posthumous claim of paternity be established by clear and convincing evidence encroaches upon the Supreme Court's exclusive authority to dictate rules of practice and procedure;

---

**4.** It should be noted that "[a] higher level of scrutiny must be applied under the Equal Protection Clause, when challenged statutes burden 'suspect classes' of persons or what is deemed a constitutional 'fundamental right.'" (Citation omitted). *Chapman v. Gorman,* 839 S.W.2d at 240. In this case, pursuant to constitutional analysis, the statute does not burden a "suspect class" nor a "fundamental constitutional right."

nor does the Supreme Court itself. Indeed, this very statutory requirement that posthumous paternity claims be proven by "clear and convincing" proof appears to emanate from the Kentucky Supreme Court's holding in *Fykes v. Clark*, Ky., 635 S.W.2d 316 (1982), which pre-dated the current statute by nearly six years. Because the legislature had failed to revise the former intestacy statute (held invalid in *Pendleton v. Pendleton*, Ky., 560 S.W.2d 538 (1977)), the Supreme Court was forced to set forth a new standard of proof to determine the inheritance rights of an illegitimate child whose father died intestate in *Fykes*.[5] In 1988, the General Assembly incorporated the *Fykes* holding into statute, enacting the current version of KRS 391.105(b)(2) (the "clear and convincing evidence" standard of *Fykes* ). In view of this history, we cannot conclude that the legislature exceeded its authority in enacting the provision nor that it impliedly usurped the authority of the Supreme Court.

■ We have read the record very carefully and are cognizant of the vast amount of testimony presented to the jury. Many witnesses were called to give extensive testimony concerning Harris's paternity. Witnesses for appellant were most convincing on behalf of Harris. However, numerous witnesses for appellees presented highly contradictory testimony. Whether the "clear and convincing" standard was met was a task to be determined by the jury, which certainly had ample evidence upon which to base its verdict. We cannot find that the jury clearly erred in its determination so as to compel entry of judgment notwithstanding the verdict.

■ Finally, Harris maintains that the trial court erred by failing to grant a new trial due to juror misconduct. We do not agree. Harris claims that he is entitled to a new trial on the grounds that a juror, William Clayton Neal, engaged in misconduct by failing to make full disclosure during voir dire. Had Neal responded appropriately to questions addressed to the panel on voir dire, Harris contends, he (Neal) would have used a peremptory strike to eliminate him from the jury. Harris charges that juror Neal failed to acknowledge having had a deed prepared for him by Herb Sparks, the defendants' attorney. He also argues that Neal was required to disclose the fact that his wife worked for Metcalfe County Nursing Home where Sparks served on the Board of Directors.

Accompanying Harris's motion were supporting affidavits, which were countered by a memorandum and affidavits submitted by the defendants' attorney. Upon considering the matter, the trial court rendered its findings of fact and conclusions, which are not clearly erroneous and do not reveal an abuse of discretion. As the Supreme Court has recently noted:

> We can hardly conceive of a circumstance in which greater deference should be granted to the findings of the trial court.... The trial judge was immersed in the case and it would be utterly extraordinary for an appellate court to disregard his view as to questions of candor and impartiality of a juror.

*Haight v. Commonwealth,* Ky., 938 S.W.2d 243, 246 (1996), *citing Riley v. Commonwealth,* Ky., 271 S.W.2d 882 (1954).

The judgment is affirmed.

All concur.

---

**5.** The *Fykes* Court noted that clear and convincing does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people. 635 S.W.2d at 318.